MILLAUDON et al. *v.* PRICE et al.

Where a broker, acting as the agent of the vendor of a quantity of salt stored in bags, represents to the purchaser that it had been in store only five or six months, when it had in fact been stored for fifteen or eighteen months, and the evidence shows that the statement of the broker produced the impression on the mind of the purchaser that it had not been stored longer than five or six months, the representation being as to a point material in judging of the condition of the article, and the vendor being bound by the representations of his agent, the sale will be rescinded; and this though the purchaser examined the salt before buying, for the misrepresentation might have influenced the character of the examination made by him.

The general rule is that a vendor is bound to good faith, and if he knows the article offered for sale to be defective he is bound to state the defects. The exception to this rule is that, where the article is susceptible of convenient inspection and examination, the purchaser is bound to make and abide by such examination. Salt in bags is not susceptible of inspection and examination without much trouble and inconvenience.

APPEAL from the Commercial Court of New Orleans, *Watts, J. Benjamin* and *Micou*, for the appellants, cited Story on Sales, 369.

*Randall*, for the defendants. Good faith required that plaintiffs should have declared the time that the salt had been in store. C. C. 2496 to 2499, 2507, 2523. 8 Mart. 709. The vendor is bound to warrant the thing sold. C. C. 2449 to 2451. As to the nature and effect of simple inspection, and how far it will exonerate the vendor from the effect of his representations, concealments &c., see C. C. 2496 to 2499, 2507, 2509, 2523, 2525, 2526, 1891, § 3, 4. *Rouzel* v. *McFarland*, 8 Mart. 704. *Williams* v. *Miller*, 9 La. 134. *Shepard* v. *Kain*, 5 Barn. and Ald. 240. Story on Sales, § 294. 16 Duranton, 339. 17 La. 97, 18 La. 37. 3 Rob. 90.

In this case the judgment pronounced by the Commercial Court was in the following words:

The present litigation grows out of the sale and purchase of 2,400 sacks of salt, half of which were fine salt and half coarse. The plaintiffs had in store that quantity, which they were desirous to sell at some sacrifice, as they had bound themselves to deliver up the store which contained it to new lessees. A broker, who was apprised of this circumstance, applied to them to be employed to sell it, and was directed to do so at the limit of 87 cents per sack, coarse salt in good shipping order, then selling for $1 00 to $1 05, and fine, for $1 15 to $1 20 delivered, the then current market price. The broker offered the salt to Capt. *Taylor* of the steamer Missouri, stating that it had been in store from five to six months. Capt. *Taylor* went to examine the salt, pronounced it in bad order, and refused to make the purchase ; the broker then offered the salt to defendant *Frost*, stating to him the reason why the salt was offered at so low a price. *Frost* made inquiry as to the length of time the salt had been in store, and the broker answered five or six months, and that the salt was in good order, and urged *Frost* to go and see the salt. *Frost* replied that if it had only been in store five or six months and was in good order, it was not necessary, and he would at once make the purchase; the broker, however, was unwilling to conclude the bargain unless *Frost* would go and see the salt. The broker assigns on his examination, as a reason for his desire that *Frost* should see the salt before he purchased it, that the coarse salt was stored under an open shed, and part of it had become black with dust, &c. Accordingly they went together to see the salt, the broker opened the doors of the store where the fine salt was stored, and *Frost* went over the salt, striking his heel into the bags to ascertain their soundness; he also looked at the coarse salt. The top bags of the salt looked to be in good order. After this examination *Frost* offered 85 cents per sack ; on reporting this offer to *Morgan*, he declined taking it. The broker was to receive two cents per sack for brokerage, and being desirous to effect the sale he offered to relinquish one cent per sack if *Frost* would rise one cent per sack in his offer. This was

agreed to, and on its being reported to *Morgan*, he agreed to accept the price, going himself to make the bargain with *Frost*. The sale was made on the 8th September, 1845, and the salt was to be removed on or before the 10th of September. On boasting of his bargain in the presence of one of his neighbors, *Frost* was then first informed that the salt had been in store for sixteen or eighteen months. *Frost* gave an order for 1,500 sacks of the salt on the day of the purchase, but on attempting to remove it, the bags were found so rotten that the draymen refused to cart it, and the captain of the boat refused to receive it. Only 112 sacks of the salt were taken away, and on the same day *Frost* notified the plaintiffs that he would not receive it on account of its condition; and, both parties standing upon their rights, the result has been the present litigation. The salt was afterwards sold by order of court, and brought 65 cents per sack, the defendants themselves becoming the purchasers of it. Five hundred sacks of the coarse salt were afterwards purchased at 90 cents per sack, and sold at $1.00 per sack, to be used for the curing of hides. Some extra care was taken in removing the 500 sacks of salt; the purchaser had no use for the sacks; and indeed it was sold as damaged in this respect, but it was convenient to his premises, and his vendor had sold it to him before he purchased it. Several witnesses testify to the nature of the representation made by the broker, as to the time the salt had been in store. They state that he made a positive assertion that it had only been in store five or six months. The broker testifies that he did not know how long the salt had been in store; he admits that he stated it had been in store five or six months, but adds that he made the statement that this was his supposition or belief, and that he did not assert it positively. The broker also testifies that, at the time of the offer of the salt, and during their conversation at the warehouse, he several times repeated to *Frost* that he was to take the salt as it was, and this is corroborated by another witness. It is fully established that the time during which salt has been in store, is of great importance in coming to a correct conclusion as to the merchantable condition of salt; that if the salt has not been rained upon and is stored in good order, the sacks will remain sound and good during five to six months; but that, after that time, the moisture and acid of the salt will so corrode the sack that it is not expected to be in good order. It is also proved that the salt in question had been in store from fifteen to eighteen months. Salt is sometimes re-sacked; the second-hand sacks and labor required will cause an expense of twelve to eighteen cents per sack. In purchasing salt in store, in order to judge of its condition, much reliance is placed on the length of time it has been stored. Two principal dealers testified that they did not rely solely on this circumstance, but would take down some of the tiers and examine the bottom sacks. Other dealers testified that they never knew this kind of an examination to be made, that it would be attended with difficulty and labor, particularly as to the salt in the middle of the pile, where it has no ventilation and the sacks are most exposed to rot.

In deciding on this case, we must, first, determine from the evidence what was the nature of the representation of the broker, and how far it must be allowed to effect the sale. Secondly, whether the personal examination of the salt by *Frost* bound him to the bargain.

1st. It cannot be doubted but that the impression was created on the mind of *Frost* at the time of the purchase, that the salt had been in store only five or six months. It is easy to reconcile the testimony of the other witnesses with that of the broker. Their attention was called to the principal matter stated, to wit, that the salt had been in store only five or six months, while any qualification as to belief, opinion, or supposition, might easily escape their attention or be forgotten. As the broker admits that he had no knowledge on the subject, it was manifestly wrong on his part to state any given time, even upon supposition. He excuses it by stating that he could not suppose the salt to have been stored longer than five or six months, as it is not usual to keep salt over the season. It is very clear however, that his language produced the full conviction and impression on all who heard him, that the salt had not been stored longer than five or six months; and it is manifest that this impression might have great effect upon the mind of *Frost* in the degree of examination which he made of the condition of the salt.

2d. I do not consider that salt is an article which is susceptible of inspection or examination as to its condition, without much trouble and inconvenience. The rule, is as stated by defendants' counsel, that the vendor is bound to good faith, and if he knows the article to be defective he is bound to state the defects.

MILLAUDON
v.
PRICE.

The exception to that rule is, that if the article is susceptible of convenient inspection and examination, the buyer is bound to make and abide by such inspection and examination. This inspection or examination is such as is usually made of the article, to wit: of flour, sugar, &c., by a trier; of a ship, by boring her timbers; of liquors, by a proof-glass, &c. Duranton, vol. 16, p. 339, says, that the buyer will be dispensed from this examination, even as to those articles which are fully susceptible of it, when the article sold is covered up by other goods; and in such case the seller will be held bound to give a good, merchantable article. Representation on a point material to form a sound judgment as to the condition of the article, will also dispense with strict examination.

In the case of *Shepard* v. *Kain*, 5 Barnwell and Alderson, 240, the ship was advertised to be copper-fastened, and to be taken with all her faults as she lay. She was not copper-fastened within the meaning of that term among the trade, but her condition in this respect could have been easily ascertained. The court considered that the expression that she was to be taken with all her faults as she lay, did not derogate from the representation that she was copper-fastened. Had the statement, that the salt had been in the store five or six months only, been well founded, the defendants would have been bound by the bargain, whatever had been the condition of the salt. As, however, the language of the broker, although perhaps not so intended, was calculated to produce, and did produce, the belief that the salt had been in store only five or six months, when, in truth and in fact, it had been in store sixteen or seventeen months, and this point is a very material one in judging of the condition of the salt, and as the plaintiffs are bound by the language and conduct of the broker who is their agent, I consider that the defendants are not bound by the bargain.

This is one of those instances in which the anxiety of the broker to effect a transaction has led to misunderstanding between the parties. With regard to the defendants' claim for damages for loss of profits, I consider that both parties are in fault in this case. The seller was bound to state so material a fact as the length of time during which the salt had been in store, and the buyer made a loose contract when he did not require that the article should be delivered to him in merchantable or shipping order. Both parties have sufficiently suffered in the expense and trouble of this litigation.

It is therefore considered that there be judgment for the defendants, and that plaintiffs pay the costs of suit.

The judgment of the court was pronounced by

KING, J.* The judgment appealed from in this case is affirmed, for the reasons assigned by the judge of the Commercial Court, with costs.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## DE ST. AVID v. PICHOT.

An appeal applied for by motion at a term succeeding that at which the judgment was rendered, will not be dismissed on the ground that the application should have been by petition in the ordinary form, and not by motion; but in such a case the appellee must be duly cited. Citation is only dispensed with when the motion; is made at the term at which the judgment was rendered, the opposite party being, by a fiction of law, considered as then in court. Stats. 20 March, 1839, s. 19. 22 March, 1843, s. 1.

Where an appeal is obtained on motion at a term subsequent to that at which judgment was rendered, and the appellant neglects to direct the clerk to issue a citation, and none is issued, the omission must be considered as imputable to the appellant and not to the clerk, and the former will not be entitled, under sec. 19 of the stat. of 20 March, 1839, to time to correct the error.

· The sittings of the late District Court of the First District were divided into monthly terms. Stats. 10 Feb'y, 1813, s. 5. 29 April, 1824.

---

* SLIDELL, J., did not sit in this case, having been of counsel.