## Wm. Mure v. Wm. S. Donnell.

Where a charge of false packing is made, in reference to cotton of various planters, in different sections of the country, under circumstances rendering the charge improbable, and the plaintiff urges a reclamation against the factor who sold him the cotton in lots, and without any particular representations as to quality, the cotton having been sampled by the seller and re-sampled by the purchaser, the latter must furnish *clear, consistent and cogent proof* to enable him to recover. Nor is it sufficient for the plaintiff to show that the cotton, or a portion of it, was *mixed;* it must also be proved that it was mixed to the prejudice of the buyer, and be made legally certain that the cotton was inferior to the samples by which it was sold. An unreasonable custom will not be enforced. But whether the cotton was *fraudulently* packed of mixed qualities, or was mixed by carelessness or accident, if it was *inferior* to the samples, by which it was sold, the buyer is entitled to relief, *provided* it was so packed that its defects could not have been discovered on simple inspection.

The sampling of the cotton by plaintiff's brokers in Liverpool, and want of correspondence between the cotton he sold there and his samples taken there, cannot affect the defendant. The contract sued on, having been made here, must be governed by our laws.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.
W. D. *Hennen*, for plaintiff and appellant.    T. J. *Semmes* and *Robert Mott*, for defendant.

Merrick, C. J.    The plaintiff alleges in substance that on the 24th day of May, 1854, he bought, in this city, of the defendant, 320 bales of cotton, consisting of four parcels, whereof the *first* consisted of 130 bales (O. H. shipping mark) of a quality represented by said *Donnell* to be middling; the *second* lot, of 48 bales, with a different shipping mark, also by said *Donnell* represented to be of the same quality; the *third* lot, of 90 bales, also of a different shipping mark, and represented to be of a quality termed good ordinary to low middling; and the *fourth* of a lot of fifty-two bales, of still a different shipping mark, and by said *Donnell* represented to be of a quality termed ordinary; that petitioner paid, in consideration of the different qualities of said cotton, a gross sum for the aggregate number of pounds of said cotton at the rate of 7¼ cents per pound, amounting to $10,390 84; that said *Donnell* represented that said first lot, which was sold by the sample, was all good and merchantable cotton, of a quality called middling; that if he had known the actual quality of 53 bales of said first lot, he would not have given more than five cents per pound for said 53 bales; that said cotton was bought to ship to Liverpool, as said *Donnell* knew; that it was so shipped, and said first lot was there sold in market for 5½d. per pound; that the purchasers thereof discovered that 53 bales thereof were falsely and fraudulently packed, the interior being altogether different from the exterior; that said interior was trashy, unsound and unmerchantable, and that he was compelled to take back the cotton and pay fifty dollars expenses to the purchasers; that he has incurred, for storage, insurance, and other expenses in the preservation of said cotton, $300; that said 53 bales contain 23,300 pounds, and that the difference between the price he would have paid had he known the quality and the price he actually paid was $600.    The petition concludes with a prayer for judgment for $900 damages.

The answer admits that the defendant sold the 320 bales of cotton at 7¼ cents by sample, according to the custom of the trade in New Orleans, and avers that the plaintiff having re-sampled the same through his broker, accord-

47

MURF
r
DONNEL L.

ing to usage, received the lot without objection, and paid the price thereof. He denies that the said lot of cotton was falsely packed, and that the fifty-three bales mentioned in the petition were his cotton, and denies that he made any representations whatsoever respecting the cotton, or that he had any knowledge of its destination or the object for which it was purchased.

The proof shows that the cotton was sold in New Orleans by sample, in the usual manner, and that the lot consisted of at least three qualities, viz: middling, good ordinary and ordinary; the broker who acted for the plaintiff says there were four grades, thus contradicting his classification made at the time. The price agreed upon was, as admitted by the answer, a round price for the whole 320 bales. The only representation made by the vendor was that there were about so many bales middling cotton in the lot, the witness does not remember how many bales. It was an inducement to make the purchase. Middling cotton at that time was worth $8\frac{1}{4}$ cents, and the lowest quality of the lot six cents, in New Orleans.

After the purchase, the plaintiff's broker marked 130 bales O. H. and 48 bales J. J. for shipment as middling, 90 bales as good ordinary and 52 bales as ordinary.

The record does not inform us what became of the forty-eight bales of cotton marked J. J. The proof shows that the 130 bales marked O. H. were sold at Liverpool to *Messrs. Woods & Co.*, on account of the plaintiff, at $5\frac{1}{2}$ pence per pound by samples, without reference to the classification, but the samples were classed by the Liverpool broker as good middling.

The plaintiff further shows that fifty-three of the bales contained mixed cotton, the exterior of the bales being good middling cotton, worth $5\frac{1}{2}$ pence, and the interior being ordinary, and not worth more than $4\frac{1}{2}$ pence, and that the average value of the whole bale being worth only four pence three farthings per pound.

The 320 bales were from *nineteen* planters from various quarters and different rivers. The 130 bales were from *thirteen* different planters, and, what is surprising, *the 53 bales out of the 130 were from the same number of planters*.

The proof shows, as just observed, that the cotton was mixed. One witness, the Liverpool purchaser, *Thomas Woods*, swears "most certainly that the cotton was fraudulently packed for the purpose of deceiving." The certificate of the Liverpool brokers who examined the cotton state that the cotton was unmerchantable, in consequence of being irregularly packed, having two qualities of cotton in the same bale, and not worth more than $4\frac{3}{4}$ pence per pound.

In applying the testimony to the allegations in the petition, it is incumbent upon the plaintiff to make out his case by clear, consistent and cogent proof, for the case he states is deprived of probability from the fact that it convicts *thirteen* different planters from different parts of the cotton region tributary to the commerce of this city with falsely and fraudulently packing five out of every thirteen in a small lot of one hundred and thirty bales of cotton. Were it pretended that one or two planters had been guilty of a fraud of this kind, it would more readily command our belief.

But it is shown in the testimony of witnesses resident here that the cleanest and finest portion of the cotton, in ginning, falls at a distance from the gin, and that the more common portion, from its gravity, falls next to the gin. Hence, without any design to defraud on the part of the planter the bale may present a mixed appearance, although it is really the same cotton, but taken from dif-

ferent parts of the lint-room. The mixed appearance of the cotton examined in Liverpool may, therefore, be accounted for without supposing that it was fraudulently packed.

But whether the cotton was falsely packed or mixed by carelessness or accident, if it did not correspond with and was inferior to the samples by which it was sold, the purchaser is entitled to relief, provided it was so packed that its defects could not be discovered on simple inspection.

The contract under which this action is brought was made here, and is therefore to be governed by our laws. The sampling of the cotton by plaintiff's brokers in Liverpool, and the want of correspondence between the cotton he sold there and his samples taken there, must be without influence on the present case, for the defendant was no party to that contract. The question is, was there error or fraud in the sale of 320 bales of cotton made in this city on the 24th day of May, 1854, which will enable the plaintiff to claim a diminution of the price?

We have already seen that the sale was made of three hundred and twenty bales sold by sample, and the only representation made by defendant was that the lot contained about so many bales of middling cotton, the number not being recollected by the witness.

The plaintiff alleges in his petition that the representation was that the lot contained one hundred and seventy-eight bales of middling cotton. The District Judge has demonstrated by a calculation that this cannot be true because, at the price alleged to have been given for the different grades, the gross sum paid would have been $10,896 90 instead of $10,390 84, the amount actually paid, there having been 143,322 pounds sold.

He further shows, that at the prices alleged by the plaintiff, in his petition, to have been given, as well as the classification there stated and actually made by the plaintiff's broker, either of the following combinations will produce (within a fraction) the gross sum paid by plaintiff, viz: 128 bales middling, 90 bales good ordinary and 102 ordinary, or 65 bales middling, 52 bales ordinary and 203 good ordinary.

As there is no proof on the subject, the defendant is at liberty to assume any combination which will sustain the contract, and if it appear reasonable, the court ought to adopt it. If the plaintiff would recover under a contract not proved with certainty, he should show that his contract has been violated under any reasonable construction which can be placed upon it as proved.

It is next to be considered whether there is sufficient proof in the record to enable the plaintiff to recover aside from the representations of the plaintiff? The plaintiff's main witness, as we have seen, swears that there were four qualities of cotton sold by the defendant to plaintiff as middling, low middling, good ordinary and ordinary, but his actual classification made but three. How many bales there were of each kind is a matter of pure conjecture. Now it is shown that the lowest grade contained in the fifty-three bales complained of was, with a trifling exception, ordinary cotton, and corresponded with the lowest grade sold by defendant to plaintiff.

These fifty-three bales were not compared with the samples taken in New Orleans, and there is nothing to show with legal certainty that they may not have been classed as ordinary cotton. If so, the plaintiff has no reason to complain, for he has not been injured if a part or the principal portion of the cotton was of a better quality than its sample.

Courts sit to redress real and not immaginary injuries, and any custom, therefore, which would authorize the buyer, after delivery and payment of the price, to throw back the cotton upon the hands of the vendor, and rescind the sale because cotton of a finer quality than the sample had been mixed in the bale in packing would be an unreasonable custom, and could not be enforced in a court of justice. The proof, therefore, which the plaintiff has adduced to show that fifty-three bales of this cotton was mixed is insufficient to enable him to recover. He should have rendered it legally certain that it was inferior to the samples by which it was sold to him.

Judgment affirmed.