PROYOSTY, J.
The defendants Mace and Brantley had a logging contract. They had also a logging outfit, with which they were carrying out the logging contract. They sold both to plaintiffs, the plaintiffs obligating themselves to carry out the logging contract. This sale is now sought to be annulled in the present suit.
We might as well dispose preliminarily of the question raised by plaintiffs as to whether the contract was a sale of the outfit or merely an agreement to sell it at a future time. The instrument evidencing the contract recites, in substance, as follows.-
That Frank Mace and L. S. Brantley sell to Neil Forsman & Co., a partnership composed of Neil Forsman,, Robert Trousdale, and John Hollander, their logging contract, and obligate themselves to deliver their logging outfit. The logging contract is described and annexed. It contains a full description of the lands upon which the timber stood, the description being according to the marks of the United States surveys.
That it is understood and agreed that the title and full ownership of the said outfit shall be and remain in the said Mace and Brantley until the full sum of $6,500, with all accrued interest and attorney’s fees, if any there be, as herein stipulated, shall have been paid to the said Mace and Brantley, and until the said Neil Forsman & Co. shall have completed to the satisfaction of the said Mace and Brantley all the terms and conditions of the “said logging contract.”
That it is further agreed that the said Neil Forsman & Co. shall begin the performance of said logging contract at once, and diligently pursue same until fulfilled, and in doing so shall use continuously the said logging outfit, and shall use said outfit for-no other purpose, nor remove it from its: present location.
“That the consideration of this transfer is $6,500,” payable as follows: $500, November 1, 1902; $500, December 1, 1902; $500, January 1, 1903; $400 on the 1st of each of the months of February, March, April, May, June, July, August, September,. October, November, and December, 1903, and January, 1904; and $200, February 1, 1904.
“That the said Neil Forsman & Co., as. evidence of said indebtedness, have this day executed their sixteen promissory notes, of even date herewith, September 30, 1902, for the sum above specified, and maturing at the dates named, bearing 8 per cent, per annum interest from date, and 10 per cent, additional for attorney’s fees, in case the notes are placed in the hands of an attorney for collection after maturity.
“It is understood and agreed that should the notes, or any one of them, herein described, not be paid at their maturity, or any of the stipulations contained in this contract, or the contract marked Exhibit A, not be faithfully performed by the said Neil Forsman & Co.,, in that event all of said notes shall become-at once due and exigible, and the said Mace- and Brantley shall have the option to sue on and collect all of said notes at one and the same time, or take possession of the logging outfit and complete the contract hereto attached and marked Exhibit A (which is the logging contract), in which event any sums paid by Neil Forsman & Co. shall be declared forfeited as liquidated damages for said failure.
“And the said Neil Forsman & Co. bind themselves to faithfully perform each and every stipulation of the contract between the said Mace and Brantley and the Hodge Fence & Lumber Co., Lim. [the logging contract], hereto attached and marked Exhibit A.”
We think that this contract evidences a *31 sale of the outfit. The thing and price are' agreed upon, and delivery is made, and the transferees subscribe an unconditional and absolute obligation to pay the price. There is but one lump price for the logging contract and the outfit together, .not a separate price for each; so that, if there was not a sale of the outfit, there also was not a sale of the contract, and it is not pretended that there was not an out and out sale of the contract. Neil Forsman & Co. are to have the use of the outfit, without anything being said as to rent or indemnity for such use, or for any wear and tear or other loss. Had any of the oxen died, or any other part of the outfit been lost, the loss would clearly have had to be borne by Neil Forsman & Co. All this would go to show that in the contemplation of the contract they were to be the owners. No date is fixed for the future sale of the outfit, but the idea is that the consummation of the transaction shall result automatically from the payment of the price and the fulfillment of the logging contract. The stipulation for the continued ownership of Mace and Brantley was clearly nothing more than a mere device to serve as security both for the payment of the price and the carrying out of the logging contract, and was in the nature of a condition which the vendors could at any time waive, leaving the sale unconditional and absolute.
Taking the contract, then, to have been a sale of the logging outfit as well as of the logging contract, we pass to the consideration of the grounds on which the annulment of the sale is demanded. It is alleged that the consent of plaintiffs to the contract was induced by the fraud of the defendants, who grossly exaggerated the quantity of the timber to be hauled, and represented the haul to be much shorter and the outfit to be in much better condition than was true; also that the execution of the logging contract was impossible; also that the defendants failed to deliver the outfit.
The last two grounds are easily disposed of. The evidence shows that the outfit was duly delivered, except two oxen, and that plaintiffs were fully informed, at the time of the execution of the contract, that four of the oxen had strayed off and were missing, and would have to be delivered later. Of course, the defendants must deliver these two oxen or pay for them, but their absence is not ground for annulling the contract. We think the decided preponderance of the testimony shows that defendants truthfully represented the number of the oxen. As to the impossibility of carrying out the contract, the thing may be impossible to the plaintiffs because of their lack of means, but the carrying out of this contract to haul and deliver a certain quantity of logs cannot be said to be impossible, within the meaning of the article of the Code which absolves the contractor who has undertaken a contract either morally or physically impossible. The article itself (article 1891) explains that “the possibility must be determined, not by the means or ability of the party to fulfill his 'agreement, but by the nature of the thing which forms the object of it.”
After reading and carefully weighing the evidence pro and con the other grounds of nullity, we are not satisfied that the fraud-complained of has been made out. Two of the plaintiffs were experienced timbermen. They were taken to the logging camp, and afforded the fullest kind of opportunity to examine and be informed as to the condition of the oxen, and as to the location and quantity of the timber. By so simple a thing as looking at the map of the parish they could have known of the distance. They went over the land to look at the timber, and if they did not go over all of it they have but themselves to blame. We think the case is fully covered by paragraph 3 of article 1847, Oiv. Code, reading as follows; “A false assertion as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the object is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood; he shall then be supposed to have been influenced more by his own judgment than the assertion of the other.”
It may be that defendants did not, though they say they did, inform plaintiffs that the timber had been estimated by an expert, and' the quantity fixed at 6,090,000 feet; and it may be they did, though they say they did not, tell plaintiffs that in their opinion the timber would cut 18,000,000 feet; but the *33 field was as wide open to plaintiffs as to defendants to make estimates on the timber. It is not pretended that this estimate of 18,-000,000 feet was given as the result of an examination made by experts.
If the oxen are as bad off as plaintiffs and some of their witnesses depict them, plaintiffs have but themselves to blame for buying them. They were given a full opportunity to inspect them.
The preponderance of the evidence is that in speaking of the haul the defendants had reference to the average haul, not to the furthest haul. A glance at the map (and plaintiffs do not deny that they were advised by the defendants to get one, and they had ten days in which to do so) would have shown at once what the furthest haul was.
That the plaintiffs made a most disadvantageous contract there can be no doubt. But they appeal in vain to the courts. The courts can only enforce the contract as made. The contract is the law of the case, and, though it happens to be a hard law, it must be enforced nevertheless.
By way of reconventional demand the defendants show that by reason of the failure of the plaintiffs to carry out the logging contract and to pay the notes as agreed all the notes have become due and are secured by vendor’s privilege on the outfit. They show further that as additional security for the payment of the notes and of the execution of the logging contract the plaintiffs transferred certain real estate to one Herman W. Rook; that, plaintiffs having abandoned the logging outfit, defendants had to take charge of and ca’re for the same at an expense of $51 or $52 per week; and that this expense is properly chargeable to plaintiffs. They pray judgment on the notes and for the 10 per cent, attorney’s fees, and for recognition of the vendor’s privilege on the outfit, and for the amount of the expenses incurred in keeping and taking care of the outfit; and they pray that Herman W. Rook be cited, and that the property sold to him be ordered to be seized and sold to satisfy the judgment herein.
As the logical consequence of the rejection of plaintiffs’ demand, there must be judgment sustaining this reconventional demand.
One of the plaintiffs worked for a few days at carrying out the logging contract, and then abandoned it. Whether this was because of the discovery that the contract was a difficult one to carry out, or because of a disagreement among the members of the firm in connection with another branch of their business, is not certain. Then another of the plaintiffs undertook to carry out the logging contract, and worked at it for about a month, and in turn gave up the undertaking, apparently, however, more because of lack of funds than because of the reasons now set up for annulling the contract. Then the plaintiffs threw úp the contract altogether, and abandoned the outfit, leaving it to shift for itself.
Herman W. Rook answers that “the property described in defendants’ answer was deeded to him at the request of both plaintiffs and defendants, as evidenced by the deeds hereto annexed, under the terms and considerations as set forth in the hereto annexed counter letters, and that he has no personal interest in the property otherwise than as shown by the annexed documents.” The documents support the allegations of this answer.
There being no proof of the value of the two oxen not delivered, we have to choose between remanding the ease, in order that tb”e trial court may fix this value, and fixing the value ourselves from our own knowledge. We will adopt the latter course, and fix the amount at $100, announcing at the same time that on complaint from either party we will amend the judgment, and remand the case for the fixing of this value.
It is therefore ordered, adjudged, and decreed that there be judgment setting aside-the judgment appealed from; condemning defendants in solido to pay to the plaintiffs the sum of $5,732, with 8 per cent, per annum interest from September 30, 1902, and 10 per cent, upon the aggregate of said amount in attorney’s fees; recognizing defendants’ vendor’s privilege for said amount, less attorney’s fees, upon the logging outfit in question; ordering the said outfit, as well as the real estate described in defendants’ answer as having been sold to Herman W. Rook, be seized and sold to satisfy this judgment; condemning plaintiffs in solido to pay to the defendants $243 for expense of keeping outfit up to date of the trial in the lower court, and reserving to defendants the right *35 to sue for any further expenses incurred in the keeping of said outfit; allowing to the plaintiffs a credit of $100 as of date September 30, 1902; and condemning plaintiffs to pay the costs of both courts.