No. 2536
Second Circuit

JOSEPH P. CLEVENGER v. SOLLIS B. MAYER

(March 11, 1926, Opinion and Decree)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Sales—Par. 79, 152, 214.

In view of Articles 2520, 2521 and Par. 3 of Article 1847 of the Civil Code, one who, after discovering the defects in the mules completed the contract of purchase by executing and delivering the notes and carried the mules to his camp and put them to work, cannot resist the payment of the notes by claiming that he was deceived by the representation of the seller.

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides, Hon. Leven L. Hooe, Judge.

This is a suit on six promissory notes executed and signed by defendant made payable to his own order and by him endorsed in blank. The defense was want of consideration. There was judgment in favor of the plaintiff as prayed for and defendant has appealed.

Judgment affirmed.

K. Hundley, of Alexandria, attorney for plaintiff, appellee.

Nachman and Wahlder, of Alexandria, attorneys for defendant, appellant.

ODOM, J. This is a suit on six promissory notes each for the sum of $50.00, bearing 8% per annum interest from their date until paid, all dated September 19, 1924, executed and signed by defendant and made payable to his own order and by him endorsed in blank.

Defendant, in answer, admitted the execution and delivery of the notes. He resists the action and defends the suit on

the ground that the consideration of the notes failed.

There was judgment in the District Court in favor of the plaintiff for the full amount sued for and defendant has appealed.

## OPINION

In the month of September, 1924, the defendant purchased two mules of plaintiff at the price of $350.00. The exact date of the sale is not shown, but we gather that the trade was made on Sunday, September 18th. The defendant paid $50.00 in cash at the time of the sale and on Monday, September 19th, he executed and delivered to plaintiff the six notes sued on, for the balance of the purchase price.

The defendant resists payment of these notes on the ground that the mules proved worthless and unfit for the use for which he purchased them and that therefore the consideration of the notes failed.

In answer defendant especially alleged that plaintiff sold him the mules under an express warranty and guarantee that they were sound and entirely free from hidden defects and without redhibitory vices; that they were in good condition and capable of doing the hardest kind of logging work; that both mules died within eight weeks of the time when he purchased them; and that the mules were crippled, patched up and afflicted with certain diseases and redhibitory vices which rendered them worthless; that while the mules were on their way to his logging camp all said defects and redhibitory vices made their appearance and that defendant notified the agent of plaintiff in Alexandria, Louisiana, of the bad condition of the mules and that he was told by said agent to keep them until plaintiff came; that when he found the mules could not do the work for which they were intended, he ceased trying to work them, took the best of care of them, notwithstanding which fact they died; that he did not tender the mules to plaintiff because plaintiff was absent from the state of Louisiana; and in paragraph twelve of his answer he says:

"Your respondent shows that by reason of the fact that plaintiff warranted the mules sold to your respondent to be good, sound and free from hidden defects, diseases or redhibitory vices before and at the time of the sale and a reasonable time in the future, and because the mules, to the knowledge of plaintiff, and in fact, were unsound and afflicted with hidden defects and redhibitory vices, which hidden defects and redhibitory vices made themselves apparent immediately after the sale, the notes herein sued upon * * * are void and invalid for want of consideration; that the consideration for that portion of the price herein sued for has failed, and that therefore nothing is due plaintiff."

He specifically pleads that the mules were warranted and guaranteed to him to be entirely free from any hidden defects and without any redhibitory vices, and that because said mules were unsound and afflicted with hidden defects and redhibitory vices the consideration of the notes has failed.

It will be noted that defendant does not set out what the hidden defects or redhibitory vices the animals were afflicted with nor does he allege that they died as the result of such vices.

He does allege, however, that the hidden defects and vices rendered them unfit for his use.

Article 2521 of the Civil Code, under the general heading "Of the Vices of the Thing Sold", reads as follows:

"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."

So far as the testimony shows, the mules were not afflicted with any vice or defect which was not perfectly apparent to even the most casual observer; and while the plaintiff and his two witnesses, Mr. Rush and Mr. Head, all testify that the mules were sound and in good condition, we are convinced that they were crippled and in bad condition at the time the sale was made. However, we are not convinced that plaintiff or his witnesses knew that to be true.

Plaintiff testified that he told defendant that the mules were free from diseases or hidden defects and that they were sound. The witnesses he called had worked the mules up to about July before the sale in September, and both testify that they were good logging mules and free from defects, except that one of them had been afflicted with "swinney" but was well. The mules, it seems, were worked up to June or July and were put in a stable at Alexandria where they remained without exercise until the sale. Whether plaintiff made any careful inspection of the mules after that date or not does not appear; but from all the testimony we are convinced that he was not aware that they were in bad condition at that time.

It is clear that he practiced no intentional deception and that he concealed nothing from the purchaser. His representations were that the mules were sound and free from hidden defects and diseases and there is nothing to indicate that he was not honest in these representations.

Defendant's place of business is some sixty miles from Alexandria where the mules were when the sale was made. They were taken from the stable on Sunday and an employee of defendant started with them, riding one and leading the other, to defendant's camp; when the mules reached Willow Glen, which is a place about four or five miles from Alexandria, defendant was there; the mules were there inspected by him and a number of other people. The defendant himself says that when they got there one of the mules was crippled; that his foot had been split open and it looked like foot disease; that the other mule was "just loose all over and crippled in the hind legs; wobbly, loose in the back and stringy"; that the black mule was loose all over; that they could not work; that they both limped and that he discovered that "on the way down".

The testimony shows that defendant made a critical examination of the mules at Willow Glen and that he borrowed a knife and made an examination of the mule's foot; that there were a number of persons there and all of them saw and discussed the condition of the mules in the presence of defendant. Several witnesses testify that the crippled condition of the mules were perfectly apparent to even a casual observer.

This was on Sunday afternoon. The mules were then on their way to defendant's camp. The defendant, seeing the condition of the mules, went back to Alexandria that night and saw plaintiff and told him of their condition. He says that plaintiff told him that it was all in his imagination and that if the mules were not all right to bring them back. Defendant had, at that time, paid $50.00 in cash on the price but had not signed the notes. He signed the notes and delivered them to plaintiff later on.

After inspection of the mules at Willow Glen on Sunday afternoon and discovery of the defects, the animals were sent on to defendant's camp where they were put to work. All the witnesses testify that on account of this crippled condition they could not work. Some of them say that the mules could have done light work but they could not do heavy hauling, and de-

fendant himself says that they could not work on account of this crippled condition.

At the time they were examined by defendant and found to be in bad condition, plaintiff was in Alexandria, five miles away; but defendant says he did not return the mules and demand rescission of the sale but merely informed plaintiff of their condition, and subsequently signed the notes.

The testimony shows that defendant is a man of mature years and for some eight or ten years at least he has been engaged in farming and logging, and this taken in connection with the fact that he personally inspected the mules for himself leads to the conclusion that he possesses some knowledge as to the fitness and value of mules. We must therefore assume that in purchasing these mules he was guided by and acted upon his own independent judgment and not upon plaintiff's warranty.

Paragraph 3 of Article 1847 of the Civil Code reads as follows:

"A false assertion as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the object is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood; he shall then be supposed to have been influenced more by his own judgment than the assertion of the other."

The case of Forsman vs. Mace, 111 La. 28, 35. South. 372, involves the sale of a tract of timber and a logging outfit including some oxen which it was later claimed were in bad condition, and the court said:

"If the oxen are as bad off as plaintiffs and some of their witnesses depict them, plaintiffs have but themselves to blame for buying them. They were given a full opportunity to inspect them."

As to inspection of goods purchased, see:

Forsman vs. Mace, *supra*.

Civil Code, 1847, par. 3.

Civil Code, 2520, 2521.

Richardson vs. Johnson, 1 La. Ann. 389.

"The vendor does not warrant against an apparent defect which might have been discovered by simple inspection unless it be shown that fraudulent means were used to conceal it at the time of the sale."

Martin vs. Price, 3 La. Ann. 4.

"The general rule is that the vendor is bound to good faith and if he knows the article offered for sale to be defective he is bound to state the defects. The exception to this rule is that when the article is susceptible of convenient inspection and examination, the purchaser is bound to make and abide by such an examination."

Huntington vs. Lowe, 3 La. Ann. 777.

In the case of Szymanski vs. Urquhart, 5 La. Ann. 491, it was stated:

"Where the defect in an article sold is apparent upon inspection, it affords no ground for an action in warranty."

In the case of Hoosier Realty Co. vs. Caddo Cotton Oil Co., 136 La. 328, 67 South. 20, the court refused to recognize this doctrine for the reason that:

"The seed sold could not have been conveniently inspected at the time of the sale as they were not segregated from other seed in the same house. The sale was of a thing indeterminate in itself."

The same rule has been applied in cases of warranty and courts have held that even in cases where there was no warranty the seller in case of eviction of the purchaser is liable to a restitution of the price. But after laying this rule down as a general principle it formally announces the exception that it shall not be the case where the buyer at the time of the sale was aware of the danger of eviction and purchased at his peril and risk.

"In the application of this law this court has frequently announced that where the vendee was aware of the defects of his article and therefore purchased at all hazards he was entitled to no claim by reason or eviction."

Citing, Civil Code, 2505.

Meyer vs. Farmer, 36 La. Ann. 785 (789).

In the case of Fee vs. Sentell, 52 La. Ann. 1957, (1964), 28 South. 279, the organ of the court in the body of the opinion said:

"The buyer in our judgment is without the right to a diminution of the price for any defect discoverable on simple inspection."

In the case of Rochi vs. Schwabacher & Hirsh, 33 La. Ann. 1364, (1368) the court quoted approvingly and applied the following doctrine laid down by the Supreme Court of the United States in the case of Slaughter's Administrator vs. Gerson, 13 Wall. 379:

"The misrepresentation which will vitiate the contract of sale, and prevent a court of equity from aiding its enforcement, must relate to a material matter, constituting an inducement to the contract, and respecting which the complaining party did not possess at hand the means of knowledge; and it must be a misrepresentation, upon which he relied, and by which he was actually misled to his injury.

"Where the means of knowledge are at hand, and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say, in impeachment of the contract of sale, that he was deceived by the vendor's misrepresentations."

And our court said:

"These considerations have also shaped our own jurisprudence on this subject, and have guided our Supreme Court in the conclusions reached in many cases involving similar issues, which cases we have carefully examined, and by which we have been led to the disposition which we make of this controversy."

Decuir vs. Packwood, 5 Mar. 306.
Clark vs. Lockhart, 10 Rob. 5.
Huntington vs. Lowe, 3 La. Ann. 379.
Szymanski vs. Urquhart, 5 La. Ann. 491.
Holland vs. Toole, 6 La. Ann. 426.
Mure vs. Donnell, 12 La. Ann. 369.

The case reported in 13 Wallace 379, cited above, is followed in McClure vs. Glady Fork Lumber Co., 183 Fed. 76, and in King vs. Lamborn, 186 Fed. 21; Vanderbilt vs. Bailey, 188 Fed. 691; Guntley Mfg. Co. vs. Keller Mfg. Co., 173 Fed. 319.

See: 149 U. S. 27, and 192 U. S. 242.

In the case of Shapiro vs. Goldberg, 192 U. S. 232 (242), the court said:

"When the means of knowledge are open and at hand or furnished to the purchaser or his agent, and no effort is made to prevent the party from using them, and especially when the purchaser undertakes examination for himself, he will not be heard to say that he has been deceived to his injury by the misrepresentations of his vendor."

In 35 Cyc. 376, the rule is thus stated:

"While as a general rule a general warranty will cover all defects it is also the rule, except in certain cases hereafter stated, a general warranty does not cover an obvious defect."

According to defendant's testimony the animals purchased by him were carefully inspected and their defects discovered. After discovering the defects he completed the contract by executing and delivering the notes sued on and carried the mules to his camp and put them to work. He cannot now say that he has been deceived by the representations of the plaintiff.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.