**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 11, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-30798
Summary Calendar

CASHMAN EQUIPMENT CORP.,

Plaintiff-Appellant,

versus

ACADIAN SHIPYARD, INC.;
SENTRY SELECT INSURANCE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
(01-CV-2411-J)

Before JONES, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff Cashman Equipment Corp. ("Cashman") appeals from the district court's grant of

summary judgment to Defendants Acadian Shipyard, Inc. ("Acadian") and Sentry Select Insurance

Co. ("Sentry Select"). For the foregoing reasons, we affirm the district court's grant of summary

judgment.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 1999, Cashman and Acadian entered into a vessel construction contract for the construction of a barge by Acadian for Cashman. Sentry Select issued a payment and performance bond on behalf of Acadian in connection with the contract. In the event that completion of the barge was delayed, the contract provided for liquidated damages of $500.00 per day as Cashman's sole remedy. The contract further required arbitration of "any dispute arising between the parties concerning the construction of the vessel or subsequent to delivery."

A number of disputes arose between Cashman and Acadian and the barge was not delivered until approximately one year after the original completion date. An arbitrator was appointed to settle the parties' disputes over nonpayment and delay damages. On August 22, 2001, the arbitration award was issued in which Cashman was awarded $85,500.00 "on its claim for liquidated damages for 171 days @ $500.00/day (359 days claimed less 188 days of excusable delay . . . awarded to Acadian Shipyard, Inc.)." The arbitrator awarded Acadian $411,170.20 on its counterclaims.[1]

On August 8, 2001 - after the conclusion of the arbitration hearing, but before the award was issued - Cashman filed the instant suit seeking reformation of the contract and rescission of the liquidated damages provision. The district court concluded that the lawsuit was not barred by res judicata based on the arbitration proceeding because Cashman's reformation claim could not have been adjudicated in the arbitration proceeding.

In its complaint, Cashman alleges that Acadian made several misrepresentations regarding its capability to construct the barge within the contractual deadline. Cashman contends that Acadian's

---

[1] For further details concerning the arbitration proceedings, see Cashman Equip. Corp. v. Acadian Shipyard, Inc., No. Civ.A. 01-2411, 2001 WL 1387863 (E.D.La. Nov. 6, 2001).

misrepresentations constitute fraud under Louisiana Civil Code Article 1953, thereby vitiating Cashman's consent to the liquidated damages provision in the contract. Cashman seeks reformation of the contract, rescission of the liquidated damages clause, and recovery of its actual damages and attorney's fees pursuant to Louisiana Civil Code Article 1958. Acadian and Sentry Select filed identical motions to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), or alternatively, motions for summary judgment. The district court granted Acadian's and Sentry Select's motions for summary judgment and dismissed Cashman's claims with prejudice. Cashman appeals the district court's grant of summary judgment. For the foregoing reasons, we affirm.

DISCUSSION

I.      Standard of Review

This Court reviews the grant of summary judgment de novo. Mowbray v. Cameron County, Tex., 274 F.3d 269, 278 (5th Cir. 2001). "Questions of fact are reviewed in the light most favorable to the nonmovant and questions of law are reviewed de novo." Id. at 278-79. Summary judgment is appropriate only when the record indicates "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).[2] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict on that issue for either party." Ureta v. Thompson, 892 F.2d 426, 428 (5th Cir. 1990).

II.     Summary Judgment

---

[2] Cashman cites to this Court's decision in Gross v. Southern Railway Company, 414 F.2d 292, 297 (5th Cir. 1969), for the proposition that "issues of negligence, contributory negligence and proximate cause, the resolution of which requires the determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case, cannot ordinarily be disposed of by summary judgment." Subsequent to Gross, however, this Court rejected the suggestion that summary judgment is especially disfavored in certain categories of cases. Little v. Liquid Air Corp., 37 F.3d 1069, 1076 & n.14 (5th Cir. 1994) (en banc).

3

Under Louisiana law, consent to a contractual obligation may be vitiated by "error, fraud, or duress." LA. CIV. CODE art. 1948. Fraud is defined as a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LA. CIV. CODE art. 1953. Fraud, however, "does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." LA. CIV. CODE art. 1954. "This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations." Id.

Cashman alleges that Acadian made numerous misrepresentations during contract negotiations with Cashman's owner, James Cashman, related to the size and facilities available at Acadian's shipyard, the company's ability to construct a barge of the size agreed upon by the completion date, Acadian's past experience in constructing large barges, and the company's financial stability. This was the first and only dealing between Cashman and Acadian, therefore we agree with the district court that the parties do not share a "relation of confidence" which would invoke the exception to Louisiana Civil Code Article 1954. Because Article 1954 applies, Cashman's claim for reformation is precluded if Cashman could have ascertained the truth concerning the alleged misrepresentations without difficulty, inconvenience, or special skill.

The district court determined that "to prevail on a claim of fraudulent inducement, Cashman must be able to demonstrate that it was reasonable in relying on Acadian's alleged misrepresentations without further inquiry or investigation into Acadian's business before contracting with Acadian to build the barge at issue." After examining the evidence, the district court concluded that "there is no genuine issue of material fact that Cashman could easily have ascertained the truth about any of

4

Acadian's alleged misrepresentations without difficulty, inconvenience, or special skill." Therefore, because of the application of Louisiana Civil Code Article 1954, Cashman could not prevail on its claim of fraudulent inducement. Cashman argues, inter alia, that under Louisiana law, it need not prove "justifiable reliance" in order to prevail on its claim for reformation. Because we agree with the district court that Cashman's claim is precluded by Article 1954, and no genuine issues of material fact exist on this issue, we need not address this particular contention.

Cashman is primarily in the business of renting heavy maritime equipment such as barges and cranes, but it is also involved in maritime construction through a Puerto Rico affiliate company. Cashman owns approximately 40 to 50 vessels of substantial size. Mr. Cashman himself has been in this business since 1975 and has been involved in the construction of approximately 18 barges. Mr. Cashman also owned a shipyard during the 1980's. Mr. Cashman learned of Acadian through a third party who arranged a meeting which took place at Acadian's shipyard. In his deposition, Mr. Cashman stated that he believes that more than one meeting took place before the contract was signed, but he is unsure whether there were two or three meetings.

Regarding Acadian's facilities, capabilities, and experience, Mr. Cashman stated that at one of the meetings prior to signing the contract he learned from Don Underwood, President of Acadian at the time the contract was entered into, that Acadian had been in business for 25 years building vessels and barges and doing repair work. Mr. Cashman recalled Mr. Underwood stating that it was a very interesting time for Acadian right now because there was not a lot of work in the yard, so they would be able to devote the entire yard and staff to this project. Mr. Cashman could not recall whether he was ever told that Acadian had built a barge the size of the one to be built under the

5

contract. Finally, Mr. Cashman admitted that he looked at the shipyard at some point, but he could not recall exactly when or what he saw.

Mr. Cashman indicated that the most important thing to him during the contract negotiations were Acadian's representations concerning financial issues. Mr. Cashman recalled being told that Acadian was owned by "a fellow out in Texas that was an absentee owner" and this man was very wealthy so financial issues were not a problem. Mr. Cashman stated that he assumed if the company was bondable then it had adequate financial capabilities to perform. Mr. Cashman did not inquire further, review any financial documentation, nor ask Acadian to provide such documentation. In Mr. Cashman's words, "I didn't ask for any. I asked for a bond, and I relied on the bond."

Cashman raises two arguments on appeal. First, Cashman argues that an issue of fact exists concerning whether Acadian would have voluntarily produced accurate and sufficient financial information, facility information, etc. during the contract negotiations had Cashman inquired. Second, Cashman contends that Acadian and Sentry Select are not entitled to judgment as a matter of law because the information necessary for Cashman to discover the truth about the alleged misrepresentations was not laid out before Cashman thus, it was impossible for Mr. Cashman to fail to avail himself of the information. After reviewing the record and Louisiana law, we reject both arguments.

In Forsman v. Mace, the plaintiffs purchased a logging contract and a logging outfit and were obligated to carry out the logging contract. 35 So. 372, 373 (La. 1903); see also LA. CIV. CODE art. 1954, cmt. (a) (referencing Forsman v. Mace). The plaintiffs alleged that consent to the contract was induced by fraud because the defendants "grossly exaggerated the quantity of the timber to be hauled, and represented the haul to be much shorter and the outfit to be in much better condition than was

6

true." Forsman, 35 So. at 373. The Louisiana Supreme Court refused to annul the contract, reasoning that:

> Two of the plaintiffs were experienced timbermen. They were taken to the logging camp, and afforded the fullest kind of opportunity to examine and be informed as to the condition of the oxen, and as to the location and quantity of the timber. By so simple a thing as looking at the map of the parish they could have known of the distance. They went over the land to look at the timber, and if they did not go over all of it they have but themselves to blame.

Id. at 374.

In Garner v. Hoffman, the Louisiana Court of Appeals found that the application of Article 1954 precluded the plaintiff's claim that his consent to a transaction to purchase stock was vitiated by fraud. 638 So. 2d 324, 342-43 (La. App. 4 Cir. 5/23/94). The court explained that there was no evidence that the plaintiff was not given the opportunity to review financial statements *prior* to the stock purchase. Id. at 343. The court concluded that the plaintiff "could have ascertained the truth about the corporation's financial status with minimal effort and skill, but failed to make the most basic inquiry that any prudent investor would have made." Id. Rather, the plaintiff took the defendant's representations at "face value." Id.

Similar to the experienced timberman in Forsman, Cashman is a sophisticated and experienced company in the business of barge rental and construction. Mr. Cashman, who has been in the business for 25 years, visited Acadian's shipyard on at least one occasion, but does not recall what he saw of the shipyard. While Cashman complains that it did not have access to financial records, and other records, Mr. Cashman admits that he did not ask to see any of those records. Rather, Mr. Cashman stated repeatedly that he relied solely on the fact that Acadian obtained a bond for the project. Given these facts, we agree with the district court that "Cashman could easily have assessed

7

Acadian's facilities and personnel in order to determine whether they were adequate for the project." Cashman's argument that an issue of fact exists concerning whether Acadian would have voluntarily produced accurate and sufficient documentation is speculative at best and irrelevant given that Mr. Cashman never asked for any documentation.

CONCLUSION

As the district court correctly concluded, "Mr. Cashman could have easily determined Acadian's construction history and capabilities by more carefully viewing the shipyard and/or asking to see relevant records. Mr. Cashman confesses he did not do so, and, instead chose to rely on Mr. Underwood's statements about the shipyard and the fact that Acadian obtained a bond." Similar to the plaintiff in Garner, Cashman chose to take Acadian's representations at face value without making the most basic of inquires. In light of Mr. Cashman's testimony, we affirm the district court's grants of summary judgment to Sentry Select and Acadian.

AFFIRM.