LOTTINGER, Judge.
This is an appeal from a judgment dismissing plaintiffs suit for nullity of a previous judgment.
On July 12,1978, plaintiff, Murlon Webb, filed a suit in redhibition against defendant, Polk Chevrolet, Inc. The trial court granted a directed verdict after plaintiffs presentation of his case. Plaintiff appealed and we reversed and remanded. Webb v. Polk Chevrolet, Inc., 387 So.2d 1240 (La. App. 1st Cir.1980), writ denied 390 So.2d 1344 (La.1980).
A new trial was scheduled for February 12, 1981. Plaintiff served interrogatories upon defendant which defendant refused to answer. Plaintiff then filed a “Notice of Intent to Apply Writ(s) of Certiorari, Mandamus, and/or Prohibition, and for Stay of Proceedings During Pendency of Application.” On January 5, 1981, the trial court ordered that “all trial court proceedings herein are hereby stayed until further ordered by the court.”
After this court denied the application for writs on January 12, 1981, plaintiff applied for writs to the Supreme Court, which were docketed on February 2, 1981. A certificate of service signed by plaintiffs counsel states that a copy of the application to the Supreme Court was mailed or delivered to opposing counsel and the trial judge, the Honorable Lewis S. Doherty III, by plaintiffs counsel on January 28, 1981. The Supreme Court disposed of this writ application on February 20, 1981, as follows: “Not considered. Not timely filed. See, La.S.Ct.Rules, Rule 10, Section 5(b).” 394 So.2d 602. The Chief Justice concurred in the action of the Court and was of the view that relator still had time to obtain an order from the district court to fix a reasonable time to file the application in the Supreme Court, citing La.S.Ct.Rules, Rule 10, §§ 1 and 5(b). The record before this court does not contain a copy of the application to the Supreme Court, and thus we are unaware of whether the Supreme Court knew a trial was scheduled for February 12, 1981.
Once the Supreme Court refused to consider the writ application, plaintiff on March 2, 1981, obtained a trial court order granting until March 13, 1981, to apply for writs to the Supreme Court.
The trial court on February 12, 1981 proceeded with the trial in the absence of plaintiff and his counsel. Attempts to reach plaintiff or his counsel were unsuccessful. Judgment was rendered for the defendant on February 13, 1981.
On February 19, 1981, plaintiff filed a petition for nullity of the February 13th judgment. The defendant filed an exception of no cause of action which was sustained by the trial court. This court re *141 versed and remanded, finding that plaintiffs petition alleged facts which, if proved, might be sufficient to justify a finding of a relative nullity. Webb v. Polk Chevrolet, Inc., 415 So.2d 402 (La.App. 1st Cir.1982).
The trial court, with the Honorable Paul B. Landry, Jr. presiding, rendered judgment dismissing plaintiffs claim of nullity after a trial on the merits. Plaintiff now appeals that ruling.
SPECIFICATIONS OF ERROR
Plaintiffs specifications of error are five in number but can be condensed into two: 1) the trial court erred in failing to find that the trial judge in the previous redhibition judgment had actual notice that plaintiff had applied for writs to the Supreme Court; 2) the trial court erred in ruling that plaintiff failed to prove the elements necessary to nullify the previous judgment.
ISSUES
La.Code Civ.P. art. 2004 provides:
“A final judgment obtained by fraud or ill practices may be annulled. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.”
Plaintiff did not allege in his petition nor did he subsequently prove that any fraud was present in the rendering of the redhibition judgment; instead he claims that an ill practice was involved. “Ill practice” has been defined by the jurisprudence as an occurrence in a case which would make the enforcement of the judgment unconscionable and which would deprive the party seeking the annulment of legal rights to which he is entitled. Evans v. Ivy, 387 So.2d 626 (La.App. 1st Cir.1980); Succession of Trouard, 281 So.2d 863 (La.App. 3rd Cir.1973). Depriving a party unfairly of his chance to have his full day in court would be such an ill practice. See Leidig v. Leidig, 187 So.2d 201 (La.App. 3rd Cir. 1966).
Plaintiffs initial contention is that Judge Doherty had actual notice of plaintiffs application for writs to the Supreme Court. Judge Doherty, called as a witness in the nullity action, denied any knowledge of the application. Neither plaintiff nor his counsel- produced any evidence that notice of the application was mailed or given to Judge Doherty. The trial judge was correct in finding that Judge Doherty did not have notice of the writ application to the Supreme Court.
Plaintiff argues that even though Judge Doherty may not have had actual notice of the intention to apply for writs to the Supreme Court, the stay order of January 5, 1981, was still in effect at the time of the completion of the redhibition trial on February 12, 1981. Plaintiff asserts that only an additional order for the trial court setting a new trial date could have rescinded the stay order. He also maintains that the “Notice of Intent to Apply for Writ(s)” should have been understood to have meant an intention on the plaintiffs part to apply to the Supreme Court if the court of appeal denied the application.
The first part of the “Notice” designates the disputed trial court ruling being brought up for review. The second paragraph reads as follows:
“Furthermore, plaintiff desires that the proceedings herein be stayed during the pendency of this matter in the appellate courts and until the ultimate outcome of all appellate proceedings.”
The accompanying order, signed by Judge Doherty on January 5, 1981, reads:
“IT IS ORDERED that all trial court proceedings herein are hereby stayed until further ordered by the court.”
The defendant asserts that the trial court in the instant action was correct in its interpretation of the “Notice” and order, and in its exoneration of Judge Doherty’s actions. In its view, the “Notice to Apply for Writ(s)” meant that plaintiff would ask the Court of Appeal only (and not the Supreme Court) to review the trial court’s ruling on the interrogatories.
After this court denied plaintiff’s writ application, absent any notice to Judge Do- *142 herty of an intention to apply for writs to the Supreme Court, Judge Doherty was justified in believing plaintiffs attempts to obtain supervisory review were finished. Additionally, this court denied the writ application on January 12, and under La.S.Ct. Rules, Rule 10, § 5(b), plaintiff had ten days from that date to apply to the Supreme Court to seek review of the writ denial by this court. Plaintiffs certificate of notice to opposing counsel in the initial writ application to the Supreme Court was dated January 28, 1981. This is without question beyond the ten day limit, and the reason the Supreme Court did not consider the first writ application to it.
The argument by plaintiff that the January 5 stay order was still in effect as of the date of the February 12 trial is without merit. Plaintiff attempts to read into the stay order that the trial judge must affirmatively remove the stay once the court of appeal and/or the Supreme Court have disposed of any writ applications. That, however, is not the way the stay order signed by the trial judge was intended,[1] nor is it the general practice in the legal community. The stay order is issued pending the writ application, and once the writ is disposed of, the stay order dissolves, particularly when the writ is denied. Even if we were to agree that the stay order included writ applications to the Supreme Court, plaintiffs application to the Supreme Court was untimely;'and thus the stay order dissolved at the expiration of the time to apply to the Supreme Court. Otherwise, a party litigant could indefinitely continue the existence of a stay order by merely delaying his application for writs.
Many of the cases construing La. Code Civ.P. art. 2004 have found an ill practice when the defendant makes no appearance because of an agreement with the plaintiff that the latter will forego action in the suit and the agreement is broken. See Collins v. Collins, 325 So.2d 773 (La.App. 2nd Cir.1976); Estelle J. Wilson Mortuary, Inc. v. Waker, 244 So.2d 630 (La.App. 4th Cir.1971). An intentional act need not be present, however, to find an ill practice. Succession of Trouard, supra.
Additionally, even if we conclude that the stay order included any and all writ applications, even to the Supreme Court, the fact that the trial judge had no knowledge that plaintiff had applied to the Supreme Court for writs when he proceeded to trial did not constitute an ill practice.
We conclude that the judgment below was not obtained by an ill practice, and affirm at plaintiff-appellant’s cost.
AFFIRMED.

. If the trial judge in signing the stay order had intended the need for some affirmative action on his part to upset the stay order, he would not have appeared in court on the scheduled trial date.