509 So.2d 139 (1987)
Murlon WEBB
v.
POLK CHEVROLET, INC.
No. 86 CA 0507.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
Writ Denied October 2, 1987.
Johnnie A. Jones, Baton Rouge, for plaintiff-appellant Murlon Webb.
John D. Powers, Baton Rouge, for defendant-appellee Polk Chevrolet, Inc.
Henry Salassi, Jr., Baton Rouge, for third party defendant-appellee General Motors Corp.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
*140 SAVOIE, Judge.
This is a redhibition action. Plaintiff-buyer, Murlon Webb, filed suit against defendant-seller, Polk Chevrolet (Polk), to rescind the sale of a 1978 Chevrolet Chevette due to engine problems. The trial court found for defendant, and plaintiff appeals.
The history of this matter is as follows. Plaintiff filed suit against defendant Polk on July 12, 1978. A bench trial was held on September 5, 1979; at the conclusion of plaintiff's evidence the court granted a directed verdict in favor of defendant, finding that the plaintiff waived all warranties as to Polk. Plaintiff appealed, and this court reversed and remanded for the completion of the trial. Webb v. Polk Chevrolet, Inc., 387 So.2d 1240 (La.App. 1st Cir.), writ denied, 390 So.2d 1344 (La.1980).
The new trial was held on February 12, 1981; attorneys for the plaintiff were not present, and the court rendered judgment in favor of the defendant. The plaintiff filed suit to nullify the trial court's judgment. After trial on the merits in the nullity suit, the court rendered judgment in favor of the defendant. Plaintiff appealed, and this court affirmed. Webb v. Polk Chevrolet, 451 So.2d 139 (La.App. 1st Cir. 1984). The supreme court granted writs, and reversed this court's judgment; it ordered that the trial court's judgment dismissing Webb's suit against Polk be annulled. Webb v. Polk Chevrolet, Inc., 458 So.2d 469 (La.1984). The court then remanded the case to the trial court for trial on the merits.
The case was tried on July 16, 1985. The plaintiff introduced the record of the 1979 proceeding, in his case-in-chief; the defendant then presented his evidence for the first time and the plaintiff presented rebuttal evidence. The trial court rendered judgment dismissing plaintiff's claim, finding that he did not prove that Polk was unwilling or unable to repair the car. The plaintiff has appealed, raising one assignment of error, which he has phrased in two ways.
Initially in his "Assignments of alleged Errors," plaintiff contends, "the court erred in its fact findings and conclisions [sic] of law in maintaining that the plaintiff had failed to carry his burden of proof sufficiently adequate [sic] to establish that the defendant in this redhibitory action was unwilling or lacks the ability to correct the defect...." Then, in "Issues Presented for Review," plaintiff set forth the issue as follows:
Whether, in view of the findings of fact by the Court that the vehicle for which the Plaintiff brings this action in redhibition against the automobile Dealership-Seller for the recission [sic] of the sale of a new automobile, which the Court finds from the evidence adduced `was beset with some serious problems relating to its performance,' the Plaintiff-Buyer was required to give the Dealership-Seller any more opportunity [or rather more time] than he did for the Dealership-Seller to correct the defect(s) before Plaintiff-Buyer should have exercised his right to bring this action in redhibition against the Defendant, the dealership-seller, for rescission of the sale?

Although plaintiff does not specifically raise as an issue the good faith or bad faith of Polk, in his brief he argues that Polk had knowledge of the defect; if Polk was aware of the defect, it would be a bad faith seller and thus not entitled to an opportunity to repair. LSA-C.C. art. 2531. Since only a good faith seller is entitled to the opportunity to repair a redhibitory defect, we must first determine whether Polk was a good faith seller before determining whether it was unable or unwilling to repair the redhibitory vice.
Most of the facts are not in dispute. Murlon Webb purchased the 1978 Chevette from Polk for the use of his then fiance and present wife, Sarah Variste Webb (Sarah). Prior to purchase, Webb, accompanied by Sarah and Diana Marks, a saleslady for Polk, test-drove the vehicle. During the drive, he noticed that the car hesitated. Ms. Marks assured Webb that the problem would be repaired before he picked up the car. Sarah picked up the car on May 10, 1978.
*141 On May 15, 1978, Sarah returned the car to Polk for servicing. She brought the car in to Polk for repairs on three more occasions: May 22, June 8, and June 16. On May 23, she brought the car into Mc-Innis Peterson Chevrolet for repair. Each time, she complained that the car needed servicing because the engine was surging, hesitating, and killing. About two weeks after the June 16 repair work, Sarah again brought the car to Polk and left it there. The car had 1330 miles on it. Webb filed suit on July 12, 1978.
The trial court found that the car did possess redhibitory defects in the engine because it hesitated and stalled; the court found that the car was not useless, but that its use was inconvenient to the plaintiff. The trial court also determined that Polk was a good faith seller. The court then held that Polk was not given a reasonable opportunity to repair the car, and that plaintiff did not establish that Polk was unable to repair the car. Judge Guidry in his oral reasons stated, "I think the matter was ... premature when they [plaintiff and Sarah] dropped the car back off at Polk."
The trial court found that Polk was in good faith because it did not know that a redhibitory "vice existed when they sold the car, to the extent of it." The plaintiff testified that during the test drive, the engine hesitation was brought to the attention of Polk's saleslady who assured plaintiff the problem would be fixed. The plaintiff and Sarah further testified that the car did not stall or kill during the test drive. The plaintiff testified that even if the car did not kill or stall, he would have returned it due to the hesitation alone. However, Sarah testified that she would not have returned the car if it only had hesitated; she returned the car because the engine killed. Polk was aware that the engine hesitated; Polk was not aware that the engine killed, which was the main problem with the car. Thus, we affirm the trial court's finding that Polk was in good faith.
Because Polk was in good faith, it was entitled to an opportunity to repair any redhibitory vices. LSA-C.C. art. 2531 reads in part:
The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale....
This article has been interpreted to require the buyer to give the good faith seller a reasonable opportunity to repair the defects prior to filing suit to rescind the sale. Dreher v. Hood Motor Co., Inc., 492 So.2d 132, 137 (La.App. 1st Cir.1986). What is a reasonable opportunity to repair depends upon the particular circumstances of the case; the court may consider "whether or not the buyer had been furnished substitute transportation, the extent to which the buyer's lifestyle was disrupted by the unavailability of the vehicle, the nature of the defect, difficulty of remedy and the number of unsuccessful repair attempts." Dreher v. Hood Motor Co., Inc., supra at 137. The Dreher court also considered what the legislature set forth as a reasonable opportunity for repair under the Motor Vehicle Warranties Statutes, LSA-R.S. 51:1941 et seq. LSA-R.S. 51:1943(A) reads as follows:
A. It shall be presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warranties if the vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days' or the same nonconformity has been subject to repair four or more times by the manufacturer, its agent, or its authorized dealer....
The Motor Vehicle Warranties Statutes were not enacted until 1984, and thus were not controlling when Webb purchased the car. However, the factors set forth in determining what is presumed to be a reasonable opportunity under the motor vehicle warranties act were based upon the prior jurisprudence; thus, these factors can serve as a guide to this court in determining whether Polk was given a reasonable opportunity to repair.
*142 Applying these factors to the case before us, we find that the trial court's finding that plaintiff failed to prove that Polk was given a reasonable opportunity to repair the Chevette's engine problems is not manifestly erroneous. In considering whether plaintiff's lifestyle was disrupted, the plaintiff-buyer, Webb, only drove the car about twenty percent of the time. Sarah mainly drove the car, using it to get to and from work via the interstate. She, and not the plaintiff, was inconvenienced by the car's engine problems. Sarah brought the car in for repair; plaintiff testified that he only picked the car up from Polk once. Sarah did not have to get substitute transportation; she was able to catch rides from Polk to her job and back with friends or relatives. Each time she brought the car in for servicing, the work was done on the same day.
As to the nature of the defect, Sarah testified that the engine mainly killed when the car accelerated or decelerated, and on turns and curves. Both she and plaintiff testified that the car did not kill when traveling on the interstate, her route to work; the car mainly killed on busy streets in stop and go traffic. The defendant's expert testified that the defect was not difficult to remedy. In Polk's attempts to repair the car the mechanics adjusted the choke three of the four times the car was brought in for servicing. C.J. Guillory, Polk's former service manager, testified that this was a simple procedure which was not an unusual adjustment on a new car. Guillory further stated that if the carburetor had to be replaced to solve the problem, it would also be a simple and inexpensive repair job.
Three of the four times Sarah brought the car in for repair she voiced the same complaint about the engine killing. Yet, according to the defendant, the engine never killed when Polk's mechanics drove the car. Sarah testified that the mechanic who wrote up the June 16 repair order rode in the car with her when she brought it in, and that he experienced the car's killing and stalling; she said that he wrote on the repair order, "correct engine killing on curves and turns and hesitating real bad." Yet, she could not identify the mechanic who rode with her. Leo Thibodeaux was the mechanic whose name was on that particular repair order; he testified that he never rode in the car with Sarah. On a different occasion, the plaintiff and Guillory testified that they rode in the car together, and that the car never killed or stalled. Thus, each time Sarah brought in the car, the mechanics at Polk could find no problem and adjusted the choke.
In looking at the repair periods set forth in the Motor Vehicle Warranties Statutes, this car was brought in for repair five times. Each time, the work was done in one day; thus, the statutory presumption that a reasonable opportunity for repair was afforded where the car was being worked on for thirty days is not applicable. A statutory presumption also arises if the "same nonconformity has been subject to repair four or more times." On three occasions in this case, the repair orders state that the complaint was that the engine was killing (May 22, June 8, and June 16). On May 15, the notation on the repair order is "correct engine surging." When the car was brought to Mc-Innis-Peterson on May 23, the mechanic wrote up the repair order as follows: "Check carb has been worked on 2 times." Sarah testified that a Polk representative advised her to take the car to Mc-Innis due to the engine problem. Thus, the same problemthe engine's killingwas subject to repair four times. During a six week period after purchase, the car was brought in for repair five times for repair work lasting one day each time. Two months after the sale, plaintiff filed suit. The court questioned Vincent Levrala, a Polk mechanic, as follows:
BY THE COURT: Doesn't it sometimes take more than one month to get to the bottom of a problem like that?
BY VINCENT LEVRALA: Yes, sometimes it does. You know, if you can't get it to act up with you, uh, we had itthey had it such a short time, it really didn't, you know, as many people that drove it, it looks likeand as long as, uh, different circumstances *143 that they did drive it, uh, looks like it would have acted up.
For the foregoing reasons, we cannot say that the trial court was clearly wrong in finding that defendant was not given a reasonable opportunity to repair. However, we would like to note that the car was brought in for repair five times for the engine's surging and killing. Yet Polk's employees could never find the problem during attempted repair, nor remedy it; Polk's mechanics simply adjusted the choke, or checked the choke adjustments. Polk's employees never made a conscientious effort to find and repair the problem with the car.
We find, as did the trial court, that rescission of the sale would be inappropriate. Nevertheless, we note that because the engine problems were defects which diminished the utility of the car, there is a partial failure of consideration. Coffey v. Cournoyer OldsmobileCadillacGMC, Inc., 484 So.2d 798 (La.App. 1st Cir.1986). IN such instances, we are authorized to grant a reduction in the purchase price rather than a rescission of the sale. LSA-C.C. art. 2543; Coffey, supra at 801.
Tender for repair is not a prerequisite to an action for reduction in price. Robertson v. Coleman Oldsmobile, Inc., 451 So.2d 1323, 1327 (La.App. 1st Cir.1984). Thus, in granting a reduction in price, we need not determine whether Polk was given a reasonable opportunity to repair the car.
In determining how much to award as a reduction in price, the court may consider "the difference between the sale price and the price the reasonable buyer and seller would have agreed upon if they had known of the defects." Menville v. Stephens Chevrolet, Inc., 300 So.2d 858, 862 (La. App. 4th Cir.), writ denied, 303 So.2d 186 (La.1974). Plaintiff paid $4900 for the Chevette and $306.32 in taxes and license fees. We find that based upon the defects in the car's engine as well as the inability of defendant to diagnose and remedy these defects on numerous occasions, a reasonable, rational well informed buyer would have paid $750.00 less for the vehicle.
For these reasons we affirm that portion of the trial court's judgment which denied plaintiff's suit for rescission of the sale; however, we find plaintiff has a legitimate claim in quanti minoris. Therefore, we amend the trial court's decision and render judgment in favor of plaintiff, Murlon Webb, and against defendant, Polk Chevrolet, for the full and true sum of $750.00 with legal interest from date of judicial demand until paid and for all costs of these proceedings.
AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.