284 So.2d 827 (1973)
J. J. PACIERA, Jr.
v.
A. J. BENITZ.
No. 5646.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
*828 Nester F. Mills and Theodore A. Mars, Jr., New Orleans, for plaintiff-appellee.
Louis A. Di Rosa, Michael E. Soileau and Daniel J. Markey, Jr., New Orleans, for defendant-appellant.
Before SCHOTT, J., and ST. AMANT and LeBRUN, JJ., pro tem.
P. C. ST. AMANT, Judge pro tem.
Defendant appeals devolutively from a judgment of the Civil District Court for the Parish of Orleans decreeing a contract entered into between plaintiff and defendant to be null and void and ordering defendant to return the consideration paid therefor.
The instrument in question dated March 30, 1971, is drawn in the form of an authentic act and is entitled "CASH SALE MOVABLE PROPERTY". It provides in part that Dr. A. J. Benitez "does by these presents grant, bargain, sell, convey, transfer, assign, setover, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which the vendor has or may have against all preceding owners and vendors" unto J. J. Paciera, Jr., "all and singular the following described property, to-wit:Boathouse # 26 Orleans Marina located on Southroadway building and contents".
Total consideration paid for the execution of this contract was $13,500. Of this amount $2,000 was paid in cash, $1,500 was represented by plaintiff's personal note, and $10,000 by a note declared in the act of sale to be secured by "a vendor's lien and privilege on the above described property."
The boathouse sought to be transferred was located on property owned by the Orleans Levee District and leased to Dr. Benitez. The boathouse had a common wall on one side with Boathouse # 27; on the opposite side a common wall with Boathouse # 25; and was constructed on pilings driven into the earth beneath the surface of the water. In no sense of the word practical or legal could the boathouse actually have been a movable. LSA-C.C. Art. 464. The act of sale makes no mention of the ownership of the realty on which the boathouse was located nor does it mention or purport to convey any rights which Dr. Benitez may have had as lessee.
*829 The circumstances surrounding the initial construction and ownership of Boathouse # 26 are in doubt. The earliest document in the record is an instrument entitled "LEASE OF BOAT HOUSE IN THE ORLEANS MARINA" executed by the Board of Levee Commissioners of the Orleans Levee District as lessor in favor of Marine Properties, Inc., as lessee, for a primary term of five years from July 1, 1961, with an option for one additional five year term.
Subsequently, on November 16, 1964, Marine Properties, Inc., executed an instrument stating "For $3,000.00, receipt of which is hereby acknowledged, we herewith transfer and assign all interest owned by MARINE PROPERTIES, INC., in Boathouse # 26, Orleans Marina to DR. A. J. BENITEZ."
The next instrument in the record is an undated document signed by Dr. Benitez entitled "NOTICE TO EXERCISE LEASE OPTION ON BOAT HOUSE" which states "I wish to exercise the option in my lease and extend the agreement on my Boat HouseFrom July 1, 1966To June 30, 1971." At the bottom of this document is a notation "Approved" signed by Milton E. Dupuy, President, Orleans Levee Board.
It is apparent from a reading of these documents that on March 30, 1971, when Dr. Benitez executed the "CASH SALE MOVABLE PROPERTY" in favor of Mr. Paciera there was a period of only three months remaining under the lease in favor of Dr. Benitez, with no provision for any further extension or renewal of the lease. The trial court found that this circumstance was known to Dr. Benitez "yet Mr. Benitez did not notify Mr. Paciera of that fact and the Court is satisfied that Mr. Paciera did not know of this fact." There is ample evidence in the record to sustain this finding of fact by the trial court which accordingly will not be disturbed on appeal.
Based upon this factual determination the trial court annulled the contract for error of fact. The trial court's conclusion of law is also correct. Error of fact is one of the defects of consent which will invalidate a contract. LSA-C.C. Art. 1819, Art. 1820. While it is not every error of fact which will invalidate a contract, LSA-C.C. Art. 1823, yet where the error bears upon the principal cause of the agreement it will have the effect of invalidating it. LSA-C.C. Art. 1825. Furthermore, "whenever the motive is apparent, although not made an express condition, if the error bears on that motive, the contract is void." LSA-C.C. Art. 1827.
The trial court declared itself "satisfied that no one would pay $13,500.00 for a boathouse on leased property, the lease to expire three months after the Act of Sale." We have no difficulty in concluding with the trial court that the error of fact here on the part of Mr. Paciera went to the very essence of the contract and compels a declaration of nullity.
Counsel for defendant contends primarily that the trial court erred in permitting the introduction of parol evidence, relying primarily upon LSA-C.C. Art. 2236 and Art. 2276 providing as follows:
"Art. 2236. The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."
"Art. 2276. Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
Counsel for defendant also cites numerous cases which consider and apply these fundamental principles of law and hold parties to contracts bound by the specific provisions thereof notwithstanding sometimes harsh results. Although these are valid principles of law yet they must *830 yield to a recognized exception where fraud or error is alleged. In Unity Industrial Life Ins. Co. v. DeJoie, 202 La. 249, 11 So.2d 546, 549 (1942), the court, after noting Articles 2236 and 2276 quoted above, made the following pronouncement:
"The codal provisions and the cases cited by counsel support the general rule invoked by them. But there is an exception to this general rule, which has been repeatedly recognized by this court, the exception being that, where a party to an authentic act alleges that he executed it through fraud or error, he is permitted to introduce parol testimony to support such allegations."
Accordingly, the trial court did not err in permitting the introduction of parol evidence in support of plaintiff's allegations of fraud and error.
Furthermore, the contract as written contains not only the general warranty clause previously quoted but also the additional provision that "The said vendor herein warrants that all the property herein transferred and conveyed is free and unencumbered and belongs to him and that he does hereby agree, bind, and obligate himself to indemnify purchaser for any loss sustained by him by reason of any debts due upon the property herein conveyed." The original lease in favor of Marine Properties, Inc., which was assigned to Dr. Benitez with the permission of the levee board, and which forms the basis of any of Dr. Benitez's rights in the premises, provides that "this lease shall not be assigned, subleased, or transferred without Lessor's prior written consent."
Although various efforts were made by Dr. Benitez subsequent to the execution of the agreement with Mr. Paciera on March 30, 1971, to obtain the consent of the levee board to the sale or assignment of the lease to Mr. Paciera, no such consent was ever obtained and Mr. Paciera never in fact obtained possession of the boathouse in question. Dr. Benitez remained in possession after the execution of the agreement of March 30, 1971, and was notified by the levee board under date of May 6, 1971, that "Your lease ends on June 30, 1971, at which time the Boat House becomes the property of the Orleans Levee Board." The boathouse was subsequently destroyed by the levee board in order to clear the area.
Under these circumstances there was not only an error of fact sufficient to invalidate the contract but there was also a total failure of consideration entitling plaintiff to recover under the specific warranty provisions of the contract.
Accordingly the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendant appellant.
Affirmed.