536 So.2d 579 (1988)
Virginia Finley, wife of/and Thomas F. HARMON
v.
Faith Gee, wife of/and George Edward SCHAMBERGER, Individually and Executive Homes of Jefferson, Ltd.
No. 87 CA 1196.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
*580 Rykert O. Toledano, Covington, for plaintiff, appellant.
Howard Fussell, Covington, for defendant, appellee.
Before WATKINS, ALFORD and FOIL, JJ.
WATKINS, Judge.
This is a suit by the buyers of a house and lot to rescind the sale, or reduce the price, based on redhibition and/or fraud. The trial court rejected the buyers' claims and ruled in favor of the seller. The buyers appeal devolutively.

FACTS
George Schamberger and his wife, Faith Gee, owned a parcel of real estate measuring approximately 250 feet wide by 200 feet deep. Schamberger had plans drawn up for a house to be built on the property. On September 25, 1984, Schamberger had the property appraised based on the value of the land as well as the proposed house, according to its plans and specifications. August Schultz did this appraisal, and concluded that $212,000 was the estimated market value. Schamberger then contracted with George Digby, Jr., a building contractor, to begin construction of the house in accordance with these plans and specifications.
Thomas and Virginia Harmon, the plaintiffs, first saw the house in February of 1985, at which time it was 90 to 95 percent complete. At this time there was in existence a contract to sell this house and a portion of the land between Schamberger and another couple named Ansel. For some reason, the proposed sale from Schamberger to the Ansels was not executed, and on May 1, 1985, the Harmons learned from Schamberger that the house was available to them for purchase.
On May 8, 1985, the Harmons executed an Agreement to Purchase with Schamberger for the house and a portion of the lot, measuring 137.5 feet wide by 200 feet deep, for the sum of $190,000. The Harmons moved into the house on June 10, 1985, although the act of sale was not passed until July 12, 1985.
The Harmons filed this suit on October 13, 1986.

FRAUD/MISREPRESENTATION

(Assignment of Error Nos. 1 & 2)
The Harmons contend the trial court erred in failing to find Schamberger committed *581 fraud by altering the appraisal.[1] Their basic argument is that Schamberger led them to believe the property they were buying was valued at $212,000, making it a "steal of a deal." The Harmons allege that this misrepresentation substantially influenced their consent to the sale. See LSA-C.C. arts. 1953 thru 1955.
Mr. Harmon testified that when they first inquired about the house, Schamberger told them "he had an appraisal for two hundred and twelve, that the house was a steal of a deal." After the house became available, and the Harmons had executed the Agreement to Purchase, Schamberger gave Mr. Harmon a copy of Schultz's original appraisal, which Schamberger had altered to include only one half of the lot, although the original appraisal was based on the entire lot.
Schamberger testified he could not remember exactly what he told the Harmons regarding the appraisal when they first contacted him. However, he stated that the Harmons were aware from the beginning that only one half of the lot was included. In addition, Schamberger stated that when he gave the altered copy of the appraisal to Mr. Harmon on May 17, 1985, he informed Mr. Harmon that he had altered the dimensions of the lot in order to keep his own records straight. Schamberger also testified that Mr. Harmon requested something "to take to his homestead that would show what he was actually purchasing" in order to get a loan.
The trial court apparently accepted Schamberger's testimony and concluded that the plaintiffs did not establish fraud by a preponderance of the evidence. We cannot say that this finding was clearly wrong. Arceneaux v. Domingue, 365 So. 2d 1330 (La.1978).
We note further that, even if Schamberger accidentally mislead the Harmons initially, they were aware that the appraisal was altered on May 17, 1985. The Harmons also learned, on the day prior to the execution of the sale, of a subsequent appraisal of the house and portion of the lot to be included. This appraisal, which Pelican Homestead obtained before finalizing the loan to the Harmons, estimated the value of the partial lot and house at $192,000. Accordingly, we cannot say that the Harmons' consent to the sale was vitiated by error. LSA-C.C. art. 1948.[2]
The Harmons also contend that the defendant promised to include certain items in the house which were not included. However, the record contains no evidence that Schamberger made any such promises. The Harmons argue in brief that since these items were included in the copy of the original appraisal they received on May 17, they were justified in expecting the incorporation of these items. However, no such testimony was elicited at trial. Only the unsubstantiated statements of plaintiffs' counsels regarding this claim appear in the trial record. Accordingly, plaintiffs did not prove this claim by a preponderance of the evidence.

REDHIBITION/REDUCTION IN PRICE[3]

(Assignment of Error No. 3)
The Harmons contend the trial court erred in finding that there were no latent defects in the house at the time of the sale.
The following Louisiana Civil Code articles are applicable:

*582 Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
Art. 2521. Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.
Art. 2530. The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.
Art. 2541. Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.
Art. 2544. The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action.
We agree with the trial court that there are not sufficient defects to render the house so useless or inconvenient as to warrant rescission of the sale. However, we cannot, as the trial court did, say that all of the alleged defects were apparent at the time of sale.
The record reflects that the Harmons thoroughly inspected the house several times during the initial negotiations with Schamberger, and actually lived in the house for over one month prior to the actual sale. The Harmons testified as to a number of defects which they discovered; however, they failed to present evidence as to when most of these defects became apparent.[4] Accordingly, we must agree with the defendants that the plaintiffs have not met their burden of proof as to the majority of the defects. However, the plaintiffs did establish that they are entitled to a reduction in price based on the cost of repairing the following defects,[5] which were clearly not apparent until after the sale:

 CORRECTIVE COST OF
 ITEM ACTION REPAIR
1. heater closet is too small tear down and enlarge $1,000.00
 (inadequate ventilation closet to facilitate venting;
 causes extinguishment re-sheetrock; rewallpaper
 of pilot light)
2. sub-flooring is loose in pick-up and renail $ 200.00
 multiple spots
3. pump house slab has remove pump house; $ 800.00
 sunk and titled redo slab; replace pump
 house
4. power roof ventilators secure to roof from inside $ 50.00
 not properly secured

The trial court was clearly wrong in not finding these defects to be latent under LSA-C.C. art. 2541, et seq. Plaintiffs are entitled to a reduction in the purchase price in the amount of $2,050.00.

DAMAGES/ATTORNEYS' FEES

(Assignment of Error No. 4)
The Harmons also contend they are entitled to damages and attorneys' fees *583 from Schamberger. They rely on Drewes v. Giangrosso, 429 So.2d 198 (La.App. 1st Cir.1983), which holds a vendor-builder of a residence is considered to be a manufacturer and, as such, he cannot avoid the conclusively presumptive knowledge of the defects in the thing he manufactures. In addition, LSA-C.C. art. 2545 provides as follows:
The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.
There is no evidence that Schamberger had actual knowledge of any defects at the time of sale. Edward Michel, the workman who installed the heater, stated that he told someone of the inadequate size of the closet, but he could not remember who it was.
As for the Drewes rule, the record reflects that Digby was the general contractor who built the house. The contract between Schamberger and Digby gave Digby complete control over the project. However, the record also reflects that Schamberger has been a "builder" for the past twelve or thirteen years. In addition, this land was developed by Schamberger specifically for the purpose of putting the house and lot up for sale. Mr. Harmon also testified that Schamberger represented to him that he had built the house.
Given these facts, we conclude that Schamberger was a vendor-builder to whom we must impute knowledge of defects in the home. Cf. Chastant v. SBS-Harolyn Park Venture, 510 So.2d 1341 (La.App. 3d Cir.), writ denied, 513 So.2d 825 (La.1987).
Accordingly, we award the Harmons the sum of $2,000 as reasonable attorneys' fees incurred in obtaining the price reduction granted herein. We also award the Harmons an additional $1,000 in damages for the inconvenience suffered as a result of these defects.[6]

DECREE
For the foregoing reasons, the trial court judgment is reversed insofar as it failed to award plaintiffs a reduction in price in the amount of $2,050.00 and additional damages in the amount of $3,000.00. The remainder of the trial court judgment is affirmed. The cost of this appeal is assessed against the appellee.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] The appellants argue that the trial court failed to adjudicate this issue since it is not mentioned in the trial court's final judgment, or reasons for judgment. We disagree. Silence in a judgment as to any part of a demand made in litigation is construed as a rejection of that part of the claim. Hendrix v. Hendrix, 457 So.2d 815 (La. App. 1st Cir.1984). In addition, the trial judge's comment to counsel at the close of the testimony, regarding post-trial memorandums, indicates he rejected the allegations of fraud.
[2] Even if we were to assume error, the Harmons' testimony does not establish they would not have bought the property if they knew the true appraised value. See LSA-C.C. art. 1949.
[3] The petition sets forth alternative causes of action for rescission of the sale or reduction of the price, which is permissible under LSA-C. C.P. art. 892. Gitschlag v. U.S. Home Corporation, 506 So.2d 1236 (La.App. 1st Cir.), writ denied, 512 So.2d 1175 (La.1987).
[4] Several defects on plaintiffs' list were obviously apparent before the sale, such as warped and improperly fitted doors, walls and windows, and improper painting.
[5] A principal element in formulating the amount of the reduction in the purchase price for latent defects is the cost of repairs. Besse v. Blossman, 521 So.2d 570 (La.App. 1st Cir.1988). In addition, tender for repair is not a prerequisite to an action for reduction in price; therefore, we need not address defendant's claim that the Harmons refused to allow repairmen on the premises at some point in time. See Webb v. Polk Chevrolet, Inc., 509 So.2d 139 (La.App. 1st Cir.), writ denied, 512 So.2d 1177 (La.1987).
[6] The main inconvenience suffered by the Harmons was the 5 or 6 heater system malfunctions which forced them to evacuate the house on cold nights when they smelled gas in the house; as well as being without heat for approximately ten nights.