671 So.2d 344 (1995)
Billy R. BASS and Judy H. Bass
v.
Dudley COUPEL and Rosa Coupel.
No. 93 CA 1270.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
Rehearing Denied November 30, 1995.
Writ Denied March 15, 1996.
*345 Robert L. Freeman, Lisa Koch, Baton Rouge, for appellees, Billy and Judy Bass.
William O. Templet, Plaquemine, and Dana K. Larpenteur, Plaquemine, for appellants, Dudley and Rosa Coupel.
Before: CARTER, GONZALES, WHIPPLE, PARRO and REDMANN[1], JJ.
GONZALES, Judge.
On or about December 11, 1981, Billy R. and Judy H. Bass purchased property in Iberville Parish from Dudley and Rosa Coupel. On September 26, 1990, the Basses filed suit against the Coupels, alleging (among other things) that "prior to and at the time of the aforementioned sale, defendants made intentional and false representations as to the status of the property."
On October 24, 1990, the Coupels filed a peremptory exception raising the objection of no right of action and a peremptory exception raising the objection of prescription, both of which were denied in a judgment dated May 15, 1991. The Coupels filed a second peremptory exception raising the objection of prescription on October 17, 1991. This second peremptory exception raising the objection of prescription was referred to the merits by the trial court. After a trial on the merits, the trial court rendered judgment in favor of plaintiffs, awarding $20,000 for "Rescission of the sale and return of purchase price of the land[;]" $11,454 for "Closing cost[s] from the sale of the land and incidental improvements made upon land[;]" $10,000 for "Damages for mental anguish and for the loss of use and enjoyment of the land[;]" and $13,679 for "Attorneys fees associated with the adjudication of this case[.]" The judgment was signed on July 13, 1992. The second peremptory exception raising the objection of prescription was denied in that same judgment.
The Coupels filed a motion for new trial on July 22, 1992. The motion for new trial was denied on December 22, 1992. The Coupels filed a motion for suspensive appeal on January *346 15, 1993. The Coupels make the following assignments of error:
1. The trial court erred in failing to apply the five year prescriptive period for nullity of contracts on the basis of fraud or misrepresentation under La.C.C. art. 2032.
2. The trial court erred in failing to hold that the flooding of the property was a redhibitory defect subject to a prescriptive period of one year from the date of sale or discovery of the defect.
3. The trial court erred in categorizing the flooding of the property subsequent to the date of sale as fraud because no evidence was presented at trial to show that the property ever flooded prior to the sale, or that the Coupels had any knowledge of the property flooding prior to the sale.
4. The trial court erred in failing to find that the flooding was a redhibitory defect, but not a defect sufficient to justify setting aside the sale because the plaintiffs continued to use the property.
5. The trial court erred in finding the failure to perform future acts pertaining to subdivision improvements constituted fraud, rather than merely promises to perform in the future.
6. The trial court erred in awarding attorney's fees in a fraud case in which the alleged cause of action arose prior to the 1984 amendments to the Louisiana Civil Code, particularly, La.C.C. art. 1958 and the comments thereunder.[2]

THE LAW GOVERNING THE CASE
This case is a suit on a contract of a sale of immovable property. Ordinarily, a suit on a contract is limited to the four corners of the contract, and within the confines of the written contract, the plaintiff has no claim whatsoever for either reformation or rescission. However, the petition makes general allegations of fraud,[3] and based on these allegations, seeks first to reform, and then to rescind, the contract. Louisiana Civil Code article 1778 provided at the time of the sale:
Certain contracts are regulated by particular rules which are established in the parts of the Code which treat of those contracts.
The rules of Book III, Title IV (Of Conventional Obligations) generally applied unless special rules modified or departed from them. This contract was governed by the special rules found in Title VII, "Of Sale." See La.C.C. arts. 2438 et seq. in effect at the time of the sale.
The purchaser, Mr. Bass, is not entitled to multiple recoveries under several different legal theories, as occurred in this case. We will analyze this case in three different parts: first, the flooding claims; second, the "approved" subdivision claims; and third, the future improvements claims.

THE FLOODING CLAIMS
First, Mr. and Mrs. Bass claim that Mr. Coupel told Mr. Bass the property did not flood. Among the remedies sought by Mr. and Mrs. Bass and granted by the trial court was, first, rescission of the sale. As to this portion of the plaintiffs' cause of action, the law on sales which governed at the time of the sale is found in La.C.C. art. 2547,[4] which provided:

*347 A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.

It may, according to the circumstances, give rise to the redhibition, or to a reduction of price, and to damages, including reasonable attorneys' fees, in favor of the buyer. (Emphasis added.)
This article is a special provision contained in Title VII. This article governs a sale, where there is a declaration by the seller that the object of the sale possesses some quality which he knows it does not possess. It requires that the plaintiffs prove that Mr. Coupel knew that the land flooded prior to the time of his non-flooding representation. Mr. and Mrs. Bass do not allege this knowledge, and there is absolutely no proof in the record of this knowledge.[5] Mr. Coupel was not even asked at his deposition if he knew the land flooded, and the trial court did not find as a fact any fraudulent representations regarding the flooding issue.[6]
At the time of the sale, La.C.C. art. 2547 (fraud in sales) and La.C.C. art. 1847 (general fraud) required scienter[7] or guilty knowledge. Thus fraud cannot be predicated on mere mistake or negligence however gross, and it is generally held that a fraudulent intent, an intent to deceive, or the equivalent thereof, is an essential element of fraud. 37 C.J.S. § 22(a) (footnotes omitted).
*348 To find fraud as to the non-flooding representation, La.C.C. art. 1847 (the law governing at the time of this sale) required an error bearing on a material part of the contract created by artifice. In this respect, artifice as defined in La.C.C. art. 1847 is "either an assertion of what is false, or a suppression of what is true...."
An intent to defraud has always been a part of the law of fraud. See Hall v. Arkansas-Louisiana Gas Company, 368 So.2d 984, 993 (La.1979); Buxton v. McKendrick, 223 La. 62, 64 So.2d 844, 846 (La.1953); Boucher v. Division Of Employment Security, Department of Labor, 169 So.2d 674, 679 (La.App. 1st Cir.1964), writ denied 247 La. 356, 171 So.2d 476 (La.1965); Farwell v. Milliken & Farwell, Inc., 145 So.2d 644, 648 (La.App. 4th Cir.1962); Colvin v. Division of Employment Security, Department of Labor, 132 So.2d 909, 911 (La.App. 1st Cir.1961); Walton v. Bufkin, 135 So.2d 309, 311 (La. App. 2d Cir.1961); Swain v. Lindsay, 85 So.2d 360, 361 (La.App. 2d Cir.1956).
Actual fraud is intentional fraud, an intent to deceive being the essential element thereof. 37 C.J.S. § 2(b) (footnotes omitted.) Fraud is defined in part as:
(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true ... (3) The suppression of that which is true, by one having knowledge or belief of the fact. (4) A promise made without any intention of performing it.
37 C.J.S. § 2(b).
Accordingly, Mr. and Mrs. Bass had to allege and prove that Mr. Coupel knew that the land flooded in order for his statement to be an artifice. If Mr. Coupel did not know the land flooded, his statement cannot be false. Thus, as there is absolutely no evidence in the record indicating that Mr. Coupel knew the land flooded, there has been no artifice, and therefore, no fraud.

"APPROVED," "TRUE," "BONA FIDE" SUBDIVISION
The main focus of plaintiffs' fraud allegations are contained in the following paragraphs of their petition:
3.
Prior to and at the time of the aforementioned sale, defendants made intentional and false representations as to the status of the property, to-wit: that the property purchased by plaintiffs was part of an existing, authorized, and approved subdivision, when, in fact, it was not duly approved as a subdivision, and currently remains unauthorized as a subdivision.
4.
Prior to and at the time of the sale, defendants recorded or caused to be recorded a plat of the purported subdivision, of which plaintiff's property was a part, with said plat falsely indicating that this land, which included plaintiff's property, was an authorized subdivision.
5.
Said plat is recorded in Conveyance Book 324, Entry 15, Iberville Parish, Louisiana and entitled "FINAL PLAT OF CHOCTAW SUBDIVISION LOTS C-1-A, C-6 THRU C-26."
6.
Said recorded plat contains the following certification: "This is to certify that this Plat is made in accordance with La. Revised Statues 33:5051 et. seq. and conforms to all parish ordinances governing this subdivision of land."
7.
In law and in fact, this subdivision has never been approved and does not conform to the Iberville Parish Subdivision Regulations.
8.
The Iberville Parish Subdivision Regulations in effect at the time of the execution of the act of cash sale were adopted by the Iberville Parish Police Jury on October 20, 1981.

*349 9.
Said regulations require the submission of a plat to the Iberville Parish Planning Commission before any sale is effected and consummated.
10.
Said regulations prohibit the filing and recording of a subdivision plat before it has been approved by the Iberville Parish Police Jury and the Iberville Parish Planning Commission.
11.
At the time of defendants' representations to plaintiffs and at the time of filing of the plat, and at all times relevant hereto, defendants knew or should have known that the property sold to plaintiffs was not part of an approved subdivision as governed by the Iberville Parish Subdivision Regulations.
. . . .
13.
The nature and character of the property as "subdivision" property, and defendants' representations that the property was, indeed "subdivision" property was a material reason for plaintiffs' purchase of the property. (Emphasis added.)
A significant indication that Mr. Coupel's oral representations[8] regarding the approved status of the subdivision are the heart of plaintiffs' case, aside from the extensive allegations above, is the argument contained in plaintiffs' original brief on appeal wherein they state:
Appellants' position is premised upon his misunderstanding of the plaintiffs' case and of the trial court's ruling on prescription, which is that the central element of fraud was not the flooding or even the lack of surfacing on the road, but rather the defendants' fundamental untruths about the very character of Choctaw "Subdivision."
There is total confusion between the parties concerning the use of the word "subdivision" and the rules governing subdivisions. The plot plan for the subdivision at issue was filed on August 25, 1981. The Iberville Parish subdivision regulations claimed by plaintiffs to govern this subdivision were not adopted by the Iberville Parish Police Jury until October 20, 1981. The sale of the land from Mr. and Mrs. Coupel to Mr. and Mrs. Bass took place on December 11, 1981. The regulations in effect at the date of filing the subdivision plat, if any, and not the regulations in effect at the date of the sale of the property, govern. Mr. and Mrs. Bass's allegation that the property was sold as an "approved" subdivision, when in fact it was not approved by the Iberville Parish Police Jury, is based upon their misunderstanding regarding what regulations applied at the time the land was subdivided. The very subdivision regulations upon which plaintiffs rely as the basis for an "approved" subdivision and thus the basis for a false representation by Mr. Coupel, as the seller, state clearly, "These regulations shall not apply to: 1. Land in subdivisions previously legally subdivided and legally recorded, except in the case of resubdivision." (Emphasis added.) Even if this language were not found in the regulations, these regulations could not retroactively be imposed upon subdivisions subdivided before their enactment. As provided by La.C.C. art. 6, in part, "In the absence of contrary legislative expression, substantive laws apply prospectively only." Newly adopted subdivision regulations cannot retroactively affect previously filed subdivisions, requiring that they be rebuilt. This would be a constitutionally impermissible impairment of existing rights. La. Const. art. I, § 23. Apparently, the only individual in this case that understood that there were no subdivision regulations governing the subject property at the time it was subdivided was Mr. Coupel, for in his deposition he answered as follows:
Q. Have you ever thought to maybe find somebody who would know if there were regulations?

*350 A. Well, I didn't think they had none.
Q. Do you know now that there were regulations in effect at the time that you were selling this property?
A. They didn't have no regulations at that time.
Q. Do you now know that to be different?
A. No.
The only evidence in the record of any laws applicable to subdivisions are those found in La.R.S. 33:5051 et seq.;[9] these laws were complied with and such is properly noted on the final plat.[10] Plaintiffs' entire case is founded on the erroneous supposition that the Iberville Parish Subdivision Regulations adopted on October 20, 1981, govern the subdivision of the subject property.
At trial, Ms. Dorothea S. Beeson, a member of the Iberville Parish Planning Commission was asked the following by plaintiffs' attorney:
Q. Ms. Beeson, do you operate under the rules of the Iberville Parish Subdivision Regulations?
A. We do.
Q. Is this the document (indicating) that controls today [October 18, 1991] the operations in your office?
A. Yes. (Emphasis added.)
We note that Ms. Beeson was never asked about the regulations in effect at the time this land was subdivided and a plot plan was filed in August of 1981, and the document introduced in connection with this testimony is exhibit P-1, the Iberville Parish Subdivision Regulations which were adopted on October 20, 1981.
In the regulations relied upon by the plaintiffs, the word subdivision is defined as "... the division of a lot, tract or parcel of land into two (2) or more lots, plots, parcels or building sites for the purpose of sale or building development...." The words "approved," "true," or "bona fide" subdivision (the terms used by plaintiffs' attorney) would have reference to subdivisions developed in Iberville Parish after October 20, 1981, the effective date of the regulations. The plot plan for the subdivision at issue, filed into evidence as Plaintiffs' Exhibit No. 3, makes no reference to an "approved," "true," or "bona fide" subdivision. It only states that it *351 was made in accordance with "... La.Revised Statutes 33:5051 et seq. and conforms to all parish ordinances governing the subdivision of land." Mr. Coupel's claim that his subdivision, laid out by a civil engineer, complied with the law, simply was not false. There can be no fraud where there is no false representation.

PROMISES OF FUTURE IMPROVEMENTS
Mr. Bass alleges (and the trial court found as fact in its reasons for judgment) that Mr. Coupel promised him that "the subdivision would be approved by the Iberville Parish Police Jury...." These statements, about things to happen in the future, whether under La.C.C. arts. 2529, 2545 or 2547,[11] cannot be misrepresentations of fact. These statements were at best aspirational and must be interpreted in light of the circumstances at the time the statements were made. The record shows such expectations were based on the custom and practice in Iberville Parish prior to the adoption of the regulations on October 20, 1981. Plaintiffs' witness, Charles Bujol, a member of the Iberville Parish Police Jury, testified in that regard as follows:
A.... It took ten years to get the Police Jury to adopt the policy such as this. And for years I saw people running a road grader down the field and sprinkling a few [sic] gravel on ita few loads of gravel and calling it a subdivision, and then you get two or three people that move into the thing and they start putting pressure on the Police Jurors to develop a subdivision. And that's what happened through the years."
Q. And the Jury would take those subdivisions in, would they not?
A. Up until that policy was passed. [Referring to October, 1981 regulations.]
Apparently, at the time Mr. Coupel's statements were made, there were no structured subdivision regulations, and it was the practice of the police jury to assume the responsibility of maintaining residential land developments which had not been constructed in accordance with detailed subdivision regulations such as those later adopted in 1981.
As with the knowledge element on the issues of the non-flooding and approved subdivision representations, there is no evidence that Mr. Coupel knew at the time he made the representations about future improvements that they would not come to pass. As is demonstrated by the plaintiffs' own evidence, much of these future improvements (except the blacktop road and utilities) were subject to the control of third parties (garbage pick-up and street maintenance police jury; mail deliveryU.S. Postal Service; school bus serviceIberville Parish School Board). Fraud cannot be predicated on unfulfilled promises or statements as to future events. Dutton & Vaughan, Inc. v. Spurney, 600 So.2d 693, 698 (La.App. 4th Cir.), writ denied, 601 So.2d 663 (La.1992); Watermeier v. Mansueto, 562 So.2d 920, 923 (La.App. 5th Cir.1990). At best these allegations only go to show that Mr. Coupel promised to perform acts in the future, and failure to perform such acts is not legal fraud. See Chrysler Credit Corporation v. Seemann, 470 So.2d 329, 331 (La.App. 5th Cir.1985). Statements promissory in their nature and relating to future actions do not constitute actionable fraud. To constitute actionable fraud, the false statements, if such are made, must relate to facts then existing or which have previously existed. Brinker v. Feist, 14 La. App. 101, 129 So. 416, 417 (La.App. 2d Cir. 1930).[12]
*352 In addition to not constituting fraud, the future promises made by Mr. Coupel do not form the basis of a breach of contract. The alleged representations were future promises of acts to be performed by others. One party's statement regarding the future actions of third parties, which may affect the enjoyment and value of the thing sold, is not compensable under a breach of contract theory if those things do not occur.[13] Louisiana Civil Code article 1761 provided at the time of the sale that "[a] contract is an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement." In regard to the future promises herein, there was nothing that Mr. Coupel could himself give, do, or not do.[14] Thus, where there is no obligation, there can be no breach of an obligation.

PAROL EVIDENCE RULE
This sale arose prior to the extensive revisions to the Louisiana Civil Code which took place in 1984. Louisiana Civil Code article 2440, provided as follows at the time of the sale at issue:[15]
All sales of immovable property shall be made by authentic act or under private signature.
Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted.
Former La.C.C. art. 2276 (after the 1984 revision, La.C.C. art. 1848) provided:
Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.
Former La.C.C. art. 2236 (after the 1984 revision, La.C.C. art. 1835) provided:
The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.
Under the former and current law, the general rule clearly was, and is, that authentic acts are full proof of the agreements contained therein as between the parties and there were, and are, two Louisiana Civil Code articles which prohibited oral or extraneous evidence of any non-written agreements which would have the effect of varying (modifying, adding, changing) or negating (nullifying, canceling, setting aside) the contract. As to agreements, both those required by law to be in writing, and those in fact in writing, the jurisprudence recognized many exceptions to the prohibition against parol evidence. Exceptions for error, fraud, and duress (the vices of consent), for ambiguity, and for failure of consideration or cause are well-recognized in the jurisprudence and are incorporated in the 1984 revisions to these articles. See First National Bank of Ruston v. Mercer, 448 So.2d 1369, 1375 (La. App. 2d Cir.1984); Paciera v. Benitz, 284 So.2d 827, 830 (La.App. 4th Cir.1973); American Creosote Company v. Springer, 257 La. 116, 241 So.2d 510, 513 (La.1970).
In this case, the written contract of sale between the Basses and the Coupels was introduced into the record. Plaintiffs sought *353 to introduce parol evidence in the form of several oral statements made by the defendant regarding (1) the non-flooding of the property, (2) the approved status of the subdivision, and (3) future improvements and services. These statements were admitted by the trial court over objection by the Coupels' attorney.
The triggering mechanism for the admissibility of parol evidence under the jurisprudence has been, with regard to fraud, a mere allegation thereof. See Billingsley v. Bach Energy Corporation, 588 So.2d 786, 790 (La.App. 2d Cir.1991). The parol evidence rule itself, and the fraud exception to it, are procedural in nature and are not substantive law. The admissibility of evidence is only the first step in the process for determining its functional efficacy under the parol evidence rule. While Mr. Bass's testimony was admissible for the purpose of attempting to establish that the sale is subject to rescission because of alleged misrepresentation, it does not, in and of itself, constitute a preponderance of the evidence. See First Financial Bank, FSB v. Austin, 514 So.2d 281, 282 (La.App. 5th Cir.), writ denied, 515 So.2d 1112 (La.1987). The mere admissibility of oral statements does not require an automatic finding that the statements have the substantive effect of either varying or nullifying a contract, particularly where the basis for the admission is claimed fraud. Fraud is never presumed, and the burden rests upon the person alleging fraud to prove it by a preponderance of the evidence. La.C.C. art. 1957.[16] This means that a plaintiff must produce competent evidence, sufficient to preponderate on a showing that the statements he now seeks to introduce into evidence were fraud. The next, and most significant, step in the process is an actual finding of fraud by the trier of fact, based on its decision to give substantive weight to the parol evidence admitted. This is done prior to any consideration of revision or nullification of the contract.[17] As noted above, this finding of fraud must incorporate a finding of scienter. If there is no scienter (no evidence in the record of guilty knowledge on the "non-flooding" or "future promises" statements) or no misrepresentation (plaintiffs' erroneous application of the subdivision regulations on the "approved" subdivision statement), there is no fraud. If there is no fraud, the oral evidence admitted under the fraud exception is not considered and the contract cannot be modified, varied or nullified because of this oral evidence. On the other hand, if there is sufficient evidence to justify the trier of fact making a finding of fraud, the contract can be reformed or nullified, but not both.
As has been indicated above, when the correct legal analysis is applied, the three sets of oral representations made by Mr. Coupel do not constitute fraud. The mere fact that Mr. Coupel's statements were admissible because fraud was generally alleged does not mean that the statements were fraudulent.
In this case, however, the trial court rescinded the contract, and ordered the return of the purchase price. The trial court further found that the parol statements reformed the contract, and found the contract, as reformed, had been breached. The court further ordered nonpecuniary damages, mental anguish, in connection with the breach even though mental enjoyment of this vacant lot was neither proven nor alleged as a principal cause of the contract. See Meador v. Toyota of Jefferson, Inc., 332 So.2d 433, 437 (La.1976). Nullifying a contract, and awarding damages for breach of the same contract, are mutually exclusive remedies and the justification for doing both in the same case (not even pleaded in the alternative) is not supported by any legal authority cited by the trial court or the plaintiffs, or known to this court. This legal error alone would require reversal of part of the award. However, the misuse of the statutes and the *354 erroneous application of the elements of fraud require a complete reversal of the trial court's judgment.
No discussion of the assignment of error relative to prescription is necessary because the foregoing reasoning makes consideration of that issue unnecessary.

DECREE
Therefore, for the foregoing reasons, the trial court judgment is reversed. Costs are assessed against the plaintiffs, Mr. and Mrs. Bass.
REVERSED.
REDMANN, J., Pro Tem., concurs and assigns reasons.
WHIPPLE, J., dissents and assigns reasons.
CARTER, J., dissents for reasons assigned by Judge WHIPPLE.
WILLIAM V. REDMANN, Judge Pro Tem., concurring;
I subscribe to Judge Gonzales' opinion, but I would prefer to sustain the exception of prescription.
WHIPPLE, Judge, dissenting.
I respectfully dissent and would affirm the judgment of the trial court, with the exception of the award of attorney's fees.
Defendants contend on appeal that the trial court erred in finding that the parties' consent to the contract was vitiated by fraud.
The contract of sale at issue herein was executed on December 11, 1981. Thus, the applicable codal provisions are those in effect prior to the 1984 revision to the obligations section of the Louisiana Civil Code, which are referred to herein.
LSA-C.C. art. 1798 provided that "there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point." LSA-C.C. art. 1819 provided:
Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied ... but also where it has been produced by ... [f]raud.
A contract is therefore a nullity if a party's consent thereto was produced by fraud, which was outlined in LSA-C.C. art. 1847 as follows:
Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other....
Artifice is defined as either an assertion of what is false, or a suppression of what is true. LSA-C.C. art. 1847(5).
Fraud must be established by a preponderance of the evidence. Harmon v. Schamberger, 536 So.2d 579, 581 (La.App. 1st Cir. 1988). A trial court's finding of fraud vitiating consent is a question of fact which will not be disturbed on appeal absent manifest error. Harmon, 536 So.2d at 581.
It is a fundamental rule of appellate review that an appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Ferrell v. Fireman's Fund Insurance Co., 94-1252, p. 4 (La. 2/20/95), 650 So.2d 742, 745. If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Ferrell, 94-1252 at 4, 650 So.2d at 745-746. Moreover, when findings are based on determinations regarding the credibility of witnesses, *355 the manifest error standard of review demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Ferrell, 94-1252 at 4-5, 650 So.2d at 746.
In light of the foregoing standard of appellate review, I am unable to find from the record herein that the trial court's finding of fraud was manifestly erroneous. In my view, there is certainly a reasonable basis for the trial court's factual finding, especially considering the conflicting testimony contained in the record. Thus, the trial court's conclusion that the contract was indeed vitiated by fraud should not be disturbed by this court.
In this case, the crux of plaintiffs' allegations of fraud are that defendant asserted that the lot which was to be purchased was in "Choctaw Subdivision," which had been constructed and formed legally, and approved by the appropriate parish governing authorities. However, the plaintiffs later learned that the defendant had failed to follow the appropriate procedures to have the subdivision approved, and therefore, the police jury would not provide assistance to plaintiffs and other residents of the "subdivision." Specifically, the roadway would not be accepted by the police jury as part of the parish road system and would not be paved or maintained by the police jury. The problems plaintiffs have encountered, and upon which they sought rescission of the sale, all stem from the fact that the roadway has not been paved and becomes impassable under certain weather conditions. The testimony presented at trial shows that with even light to moderate rainfall, the roadway becomes impassable, and that even when the weather is dry, the roadway has ruts which make passage difficult, if not impossible. The problems which plaintiffs have encountered with the school bus service and mail delivery also arise from the fact that the roadway becomes impassable. The police jury has refused to expend public funds on the subdivision and roadway because Mr. Coupel failed to have the subdivision plans approved by the appropriate authorities.
Charles Bujol, a police juror, testified at trial that even before the police jury adopted "official" regulations governing subdivision construction, the police jury required that certain procedures be followed by the developer to have the subdivision approved. Specifically, Mr. Bujol explained that the developer was required to submit a preliminary plat to the Parish Planning Commission and Police Jury for approval, as well as a final plat. Ultimate approval of the preliminary and final plats was given by the police jury.
Ms. Dorothea Beeson, a member of the Iberville Parish Planning Commission since its inception in 1964, testified at trial. Ms. Beeson stated that the planning commission never received a preliminary or final plat from defendant regarding Choctaw Subdivision, either prior to or following the date of sale to plaintiffs. Carl Grant, a member of the police jury, similarly stated that there is no record of the defendant ever having presented a plat to the police jury for approval.
Billy Bass testified at trial that defendant, without a doubt, represented to him that the subdivision has been approved by the appropriate parish authorities. According to Mr. Bass, defendant assured him that the police jury would complete the roadway by providing a paved surface and that after completion of the roadway, it would be accepted into the parish road system and maintained by the police jury, thus entitling the residents of the subdivision to all necessary services provided by the parish. Both Mr. Bass and his wife testified that they would not have purchased the property had they known it was not part of an approved subdivision.
On the other hand, defendant asserted at trial that he specifically told Mr. Bass that the subdivision had not been approved and openly acknowledged that he knew he had not taken the proper steps to ensure that the subdivision plans were approved by the appropriate authorities.
In making a determination of whether defendant committed fraud and made misrepresentations to plaintiffs concerning the status of the subdivision, the trial court was faced with directly opposing and conflicting testimony by plaintiffs and defendant. The trial court apparently believed that defendant *356 had, in fact, told plaintiffs prior to the sale that the subdivision had been properly approved, despite defendant's knowledge to the contrary.
Defendants also argue on appeal that plaintiffs' suit should have been dismissed because the suit was prescribed. In a case concerning fraud, an action for annulment must be brought within five years from the time the fraud was discovered. LSA-C.C. art. 2032. In this case, the record supports the trial court's factual finding that plaintiffs discovered that fraudulent misrepresentations had been made by defendant in the course of a meeting between the residents of "Choctaw Subdivision" and the police jury held on July 24, 1990. Clearly, plaintiffs' suit, filed on September 26, 1990, was timely.
Finally, I would reverse the judgment of the lower court insofar as it awards attorney's fees in favor of plaintiffs. Attorney's fees are not recoverable in Louisiana unless authorized by statute or contract. El Paso Exploration Company v. Olinde, 527 So.2d 511, 514 (La.App. 1st Cir.1988). Under the current code, attorney's fees are recognized as a recoverable element of damages when rescission of a contract is granted because of fraud. See LSA-C.C. art. 1958. However, this provision is not applicable to the instant case. Attorney's fees are not recoverable under the former provisions of LSA-C.C. art. 1847, where, as here, a contract is rescinded because of consent vitiated by Fraud. See El Paso, 527 So.2d at 514.
For the above and foregoing reasons, I would affirm the judgment of the lower court, with the exception of the attorney's fees award. Accordingly, I respectfully dissent.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We will not address each assignment of error individually; however, each will be encompassed within our disposition of the case.
[3] The question of lack of specificity of fraud allegations is not assigned as error and thus is not before us.
[4] The Louisiana Legislature and the Louisiana Law Institute recognized problems with La.C.C. art. 2547 and revised it, effective January 1, 1995 (as La.C.C. art. 2545) to read:

A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.
A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.
[5] Examples of the proof necessary for plaintiff to rescind a sale for fraud are found in the following cases. In Monte v. Harvey, Inc., 596 So.2d 278 (La.App. 3rd Cir.), writ denied, 600 So.2d 640 (La.1992), plaintiff filed suit for rescission of the sale of a reconstructed BMW automobile. The court found overwhelming evidence that the seller knew that the automobile had been wrecked, but that when the Montes inquired as to whether the car had ever been wrecked, they were told by the BMW salesman that it had not.

In Davis v. Davis, 353 So.2d 1060 (La.App. 2d Cir.1977), writ denied, 355 So.2d 549 (La.1978), the purchasers of a flood-prone house brought a suit in redhibition against the seller and others. The purchasers were awarded a reduction in price and attorney fees against the seller. In this case the evidence showed that the seller, after her house flooded twice, was actively involved in community efforts to have the flooding problems solved, thus there was no doubt that she knew the house flooded.
[6] The trial court did find some fraud on the part of Mr. Coupel, but it was obviously referring to a claimed fraudulent representation by him relative to the "approved" status of the subdivision as is clearly shown from the following discussion in the record:

MR. TEMPLET: That's a contract of sale.
THE COURT: That's right. Fraud can be used even in looking at it in your vein except for the prescription situation. They are looking at ten years. You are looking at a shorter period of time, and I haven't ruled on that yet. But even in your situation, if fraud is perpetrated in a cash sale, you can use parole evidence.
MR. TEMPLET: I agree with that, Your Honor, but they have to allege in what facts or in what respect in the cash sale that there was fraud. And, there's been no such allegations.
THE COURT: They are saying that he didn't perform his obligations as he had stated.
MR. TEMPLET: Look at the contract. His obligation is to deliver title to the property that was described in return for the payment of twenty thousand dollars. He's done that.
THE COURT: That's not the only allegation. The allegation is about the fraud as far as the stamp that's on this map.
MR. TEMPLET: But Your Honor, that's not in that sale.
THE COURT: That's right, but it's a part of it. It's referred to, isn't it, in that sale? I don't have it in front of me. Is this map referred to in that sale?
MRS. KOCH: Yes, Your Honor.
THE COURT: Let me see that exhibit right on top.
MRS. KOCH: P-4.
(COURT VIEWS DOCUMENT)
THE COURT: It refers to it, final plat by Walter Snyder for Dudley Coupel, dated August 25, 1981. And, that's exactly what it is.
MR. TEMPLET: That's correct. That's correct.
THE COURT: It's made a part of this sale.
MR. TEMPLET: And if they want to show that description doesn't conform to that plat, I'd be willing to concede their point.
THE COURT: I think it goes beyond that. The allegations in here don't just say something about a prescription. They are talking about the whole situation, about the way the Subdivision was set up, the sale, lots that were not approved. They are not just talking about one document. I'm going to overrule the objection. (Emphasis added.)
[7] "Scienter" means knowledge on the part of the person making the representations at the time when they are made that they are false. Morrow v. Franklin, 289 Mo. 549, 233 S.W. 224 (Mo. 1921).
[8] We accept the trial court's factual finding that the representations were indeed made by Mr. Coupel.
[9] Plaintiffs' Exhibit No. 1 is a copy of the Iberville Parish Subdivision Regulations adopted on October 20, 1981. The regulations are a lengthy, multi-page document containing extensive details for subdivision construction, such as road and street construction specifications, division of lots, bond requirements, and numerous other details. No other law governing subdivisions is in the record, judicially noticed by the court, or argued by counsel. At page 273 of the record, a casual reference is made to regulations "adopted to prevent all of the gravel subdivisions." The record contains no indication of what the regulations might be and the plaintiffs have insisted even in this appeal that the October 20, 1981 subdivision regulations are the applicable regulations governing this case.
[10] Even if there had been a misrepresentation about the subdivision as being an approved one, this type of misrepresentation is one which the jurisprudence places responsibility on the purchaser to verify. This is a representation that addressed the value of the property.

For example, in Pike v. Kentwood Bank, 146 La. 704, 83 So. 904 (1919), despite incontestable evidence that the seller of a rural tract misrepresented the market value of the property, the amount of merchantable timber and the richness of the soil, the court found all of these matters could have been verified by an inspection of the land by the plaintiff, therefore these assertions were not fraud which would invalidate the contract. In Forsman v. Mace, 111 La. 28, 35 So. 372 (1903), the defendants misrepresented the distance timber had to be hauled. The court found the plaintiffs could have learned of the distance by simply consulting a map. In Great Eastern Oil & Refining Co. v. Bullock, 151 La. 209, 91 So. 680 (1922), the court found that despite defendant's misrepresentation as to the number of barrels of oil produced per day under an oil lease, the plaintiff's suit to rescind the contract failed because he could have simply demanded the certificates of the oil refining company to ascertain exactly the amount of oil produced.
We note that "... a false assertion as to value will not invalidate an agreement if the party claiming deceit might have detected the falsehood `with ordinary attention.'" Vernon V. Palmer, Contractual Negligence In The Civil LawThe Evolution Of A Defense To Actions For Error, 50 Tul.L.Rev., 1, 26 (1978). This defense to a false assertion of value, cost or quality as provided by La.C.C. art. 1847(4) (the law at the time of this sale) was generalized and codified as La.C.C. art. 1954 by Acts 1984, No. 331, § 1.
In the case sub judice, a simple check with parish authorities would have revealed the true status of the subdivision to the plaintiffs.
[11] These are the code articles in effect at the time of the sale. We note that La.C.C. arts. 2529 and 2545 were revised effective January 1, 1995; and that the text of La.C.C. art. 2547 is deleted from the 1995 edition of the Louisiana Civil Code with La.C.C. art. 2547 reserved for future use.
[12] We note that fraud may be predicated on promises made with the intention not to perform at the time the promise is made. It has been held that promises made without any intention of performance constitute a misrepresentation of a present rather than a future fact. Automatic Coin Enterprises Inc. v. Vend-Tronics, Inc., 433 So.2d 766, 768 (La.App. 5th Cir.) writ denied, 440 So.2d 756 (La.1983). As discussed below, the plaintiffs in this case failed to present any evidence, and the trial court failed to find as fact, that Mr. Coupel had no intent to perform at the time these promises were made. Intent not to perform as promised is an essential element of this exception to the unfulfilled promises rule. Acme Refrigeration of Baton Rouge, Inc. v. Whirlpool Corp., 785 F.2d 1240, 1245 cert. denied, 479 U.S. 848, 107 S.Ct. 171, 93 L.Ed.2d 108 (U.S. 1986).

Fraud cannot be imputed, and simple broken promises alone are not sufficient. The fraud must be based on the person's intention not to perform. Silver v. Nelson, 610 F.Supp. 505, 518 (E.D.La.1985).
[13] At the time of the sale, La.C.C. art. 1889, found in Title IV of Book III of the Civil Code "Of Conventional Obligations," provided that the object of a contract may be that a third party will render a performance. When the object of a contract is that a third party will render a performance, the party making the obligation is liable for damages if the third person does not perform. In the case at hand, the object of the contract was the sale of the land; the object clearly was not performance by a third party.
[14] It is not alleged or proven, nor did the trial court find, that Mr. Coupel promised to build the blacktop road himself. Specifically, the court found "that [Mr. Bass] was in fact told that ... the subdivision would be approved by the Iberville Parish Police Jury according to all laws and ordinances and that a hard surface road, blacktop road, would be provided ..."
[15] This article was revised effective January 1, 1995, by deleting its second paragraph.
[16] Although this Civil Code article was made effective January 1, 1995, according to the revision comment (a) from 1984 "This Article is new. It does not change the law, however. It restates a principle expressed in C.C. art. 1848 (1870)."
[17] The process is analogous to that utilized by a trial court under La.C.E. art. 801(D)(3), wherein a prima facie case of a conspiracy is a necessary foundation for the introduction of the statements of co-conspirators.